24 A.3d 235

**John Wayne McLAUGHLIN–COX**

**v.**

**MARYLAND PAROLE COMMISSION.**

**No. 1093, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

July 11, 2011.

John McLaughlin–Cox, pro se, for appellant.

Susan H. Baron (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., MATRICCIANI, J.
FREDERICK SHARER (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On October 23, 2009, appellant petitioned the Circuit Court for Washington County for a writ *mandamus*. The court heard the matter on June 18, 2010, and issued a memorandum opinion and order on July 2, 2010, denying appellant's petition. Appellant noted the present appeal on July 27, 2010.

### QUESTIONS PRESENTED

Appellant presents one question for our review, which we have reworded, for clarity:

Did the circuit court err when it denied appellant's petition for writ of *mandamus?*

For the reasons set forth below, we answer no and we affirm the judgment of the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

On January 12, 1988, appellant pleaded guilty to two counts of second degree murder, and was sentenced to thirty years of confinement for each count, to run consecutively. Appellant's first parole hearing took place on July 17, 2002. On August 6, 2002, the Maryland Parole Commission ("MPC") provided appellant a copy of its "Parole Recommendation/Decision" form. In a single paragraph near the top, the form lists a number of factors that "shall be considered in determining whether you, the inmate, are suitable for parole." Immediately below that paragraph, there is a single blank line labeled "HEARING OFFICER RECOMMENDATION/COMISSION DECISION," which contains only the hand-written word "RE-FUSE."

Appellant then filed suit in the United States District Court for the District of Maryland under 42 U.S.C. § 1983, alleging that the MPC's decision constituted cruel and unusual punishment and that the MPC violated due process by failing to follow statutory procedural requirements set forth in the Correctional Services Article ("CS") of the Maryland Code (1999).

On May 15, 2003, nearly ten months after its decision, the MPC sent appellant a memorandum in which it explained its decision, as follows:

The facts of the case indicate you brutally stabbed to death two victims in their home. The elderly female was the mother of the male victim. You then left the state. The nature and circumstances of the murders and the victim impact warrants refusal.

On August 15, 2003, the U.S. District Court issued an opinion and order holding that appellant's action was "barred by the Eleventh Amendment and will be dismissed." Continuing, the court explained that "[e]ven if this matter were to proceed, the plaintiff has failed to present any facts that would entitle him to relief," in part[1] because "a Maryland inmate has no legitimate liberty interest in parole release," citing *Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir.1988) ("the Maryland parole statute does not create a legitimate expectation of parole release").

On October 23, 2009, appellant petitioned the Circuit Court for Washington County for a writ *mandamus* directing the MPC to convene a new parole hearing with different commissioners and to remove from its records all information considered in the July, 2002, hearing.

The circuit court heard the matter on June 18, 2010, and issued a memorandum opinion and order on July 2, 2010. First, the circuit court held that MPC complied with CS § 7–307(c)(2) when it provided appellant with the recommendation

---

1. The court also held that appellant presented no viable Eighth Amendment claim, but that discussion is not relevant to this appeal.

and decision form on July 17, 2002. Second, the circuit court held that the federal court's order dismissing appellant's suit barred his due process claims as *res judicata*. Appellant noted the present appeal on July 27, 2010.

## DISCUSSION

Appellant argues that the MPC contravened CS §§ 7–305 and 7–307 and thereby violated his right to due process under the Fifth Amendment to the United States Constitution, as applied to Maryland by the Fourteenth Amendment. While the trial court disposed of these arguments as *res judicata*, it appears that the federal court's holding on those claims may have been *dicta* because the action was dismissed on Eleventh Amendment immunity grounds. Therefore, we must consider the merits of appellant's due process claims.[2]

Appellant's constitutional claim is predicated on two violations of the Maryland Code. First, appellant maintains that the MPC violated the Correctional Services Article because it did not consider all factors listed in § 7–305. Second, appellant maintains that the MPC violated CS § 7–307(c)(2), which requires the MPC to "give the inmate a written report of its findings within 30 days after the hearing."

We need not determine whether the MPC actually violated these provisions, because appellant's constitutional claims are groundless. The Fifth Amendment to the United States Constitution states that no person shall be deprived of

---

**2.** Although appellant uses the words "equal protection" in his petition and brief, we will not consider it because appellant has not identified the classification to which he was subjected. *See Tyler v. City of College Park*, 415 Md. 475, 501, 3 A.3d 421 (2010) (where the government action at issue neither interferes with a fundamental right nor implicates a suspect classification, the test for determining whether a statute violates equal protection is rational basis review, under which a legislative classification will pass constitutional muster so long as it is rationally related to a legitimate governmental interest).

We also note that appellant argued to the circuit court that the MPC's actions were punishment *ex post facto*, but he has not maintained that argument in this appeal.

Finally, we note that appellant has not claimed any violation of his rights under the Constitution of Maryland.

life, liberty, or property, without due process of law, and the Fourteenth Amendment applies "due process" to state governments. In order for due process guarantees to attach, they must protect a legally cognizable "liberty interest," but appellant lacks this necessary interest. And although that is the direct application of *Bryant v. Maryland,* several important opinions followed that opinion, so it behooves us to determine whether its holding is still valid.

■ The question of what constitutes a "liberty interest" is complicated when the alleged beneficiary of legal guarantees is a convicted criminal who has been rightfully stripped of his or her liberty to be free from confinement. A prisoner naturally has restricted rights to liberty, but a valid criminal conviction that justifies punitive detention does not entirely eliminate the liberty interests of convicted persons. *DA's Office v. Osborne,* —— U.S. ——, 129 S.Ct. 2308, 2334, 174 L.Ed.2d 38 (2009).

The string of cases relevant to this appeal began with *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the Supreme Court held that a *parolee* has a "qualified" liberty interest in parole that cannot be deprived without due process. Drawing on *Morrissey,* the Supreme Court held in *Greenholtz v. Inmates of Neb. Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), that statutory language can vest a liberty interest in *prisoners* if the language creates "a protectible expectation of parole," 442 U.S. at 11, 99 S.Ct. 2100. In subsequent cases, the Court refined its holding and explained that an "expectation" requires " 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citing *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).

As so often happens, courts then seized upon the narrow rule *requiring* "specific directives" and "explicitly mandatory language" to generate an interest in parole and considered it *sufficient* outside of that context, so that whenever a legislature or administration set forth some necessary or sufficient factual condition for even a minute change in a prisoner's conditions or status, the *status quo* became a protected "liberty interest" that could not be deprived without due process. With the due process clause strained near its breaking point, the Supreme Court felt it must rein in the rule it had unleashed, and so in *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), announced:

[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (U.S.1974) ] and *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (U.S.1976) ]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek* [*v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ] (transfer to mental hospital), and *Washington* [*v. Harper*, 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) ] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

(Internal footnote omitted.)

Importantly, the Supreme Court's recent opinion in *Swarthout v. Cooke*, —— U.S. ——, 131 S.Ct. 859, 178 L.Ed.2d 732

(2011), reaffirms the holding in *Greenholtz* and thus implies that "freedom from restraint" includes a prisoner's "protectible expectation" of parole:

> Here, the Ninth Circuit held that California law creates a liberty interest in parole, *see* [*Cooke v. Solis* ] 606 F.3d [1206] at 1213 [ (2010) ]. While we have no need to review that holding here, it is a reasonable application of our cases. *See Board of Pardons v. Allen,* 482 U.S. 369, 373–381, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of Neb. Penal and Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

> Whatever liberty interest exists is, of course, a *state* interest created by California law. There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. *Id.,* at 7, 99 S.Ct. 2100, 60 L.Ed.2d 668. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures.

■ Thus, while due process guarantees no longer apply to *all* changes that invoke "explicitly mandatory" statutory procedures or considerations, constitutional protections *do* attach *specifically to parole* if a state legislature enacts "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow," that "outcome" being either to grant or to deny parole.[3] With this in mind, we return to the Supreme Court's original analysis and holding in *Greenholtz* to determine how Maryland's statutory scheme compares and whether it creates a "protectible expectation" in parole. In *Greenholtz,* the Court analyzed Nebraska's statutory language, which read as follows:

---

**3.** Lest we be misunderstood, the rule from *Sandin v. Conner* is broader than this statement, so that parole is not the only liberty interest that can be protected by "expectations." *See* 515 U.S. at 483–84, 115 S.Ct. 2293.

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, *it shall order his release unless* it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb.Rev.Stat. § 83–1,114 (1) (1976).

442 U.S. at 11, 99 S.Ct. 2100 (emphasis added). Additionally, the Nebraska statute provided a list of fourteen explicit factors and one "catch-all" factor that the Board is obligated to consider in reaching a decision. *Id.* at n. 5 (citing Neb.Rev. Stat. §§ 83–1,114 (2)(a)-(n) (1976)).

In Maryland, the MPC proceeds according to CS § 7–305, "Factors and information to be considered":

Each hearing examiner and commissioner *determining whether an inmate is suitable for parole,* and the Commission before entering into a predetermined parole release agreement, *shall consider:*

(1) the circumstances surrounding the crime;

(2) the physical, mental, and moral qualifications of the inmate;

(3) the progress of the inmate during confinement, including the academic progress of the inmate in the mandatory education program required under § 22–102 of the Education Article;

(4) a report on a drug or alcohol evaluation that has been conducted on the inmate, including any recommendations concerning the inmate's amenability for treatment and the availability of an appropriate treatment program;

(5) whether there is reasonable probability that the inmate, if released on parole, will remain at liberty without violating the law;

(6) whether release of the inmate on parole is compatible with the welfare of society;

(7) an updated victim impact statement or recommendation prepared under § 7–801 of this title;

(8) any recommendation made by the sentencing judge at the time of sentencing;

(9) any information that is presented to a commissioner at a meeting with the victim; and

(10) any testimony presented to the Commission by the victim or the victim's designated representative under § 7–801 of this title.

(Emphasis added.)

In *Greenholtz*, a single negative finding removed any possibility of parole, so that release followed *if and only if* all four factors favored the prisoner. Parole in Maryland, by contrast, is not explicitly conditioned on some particular combination of findings. This is to say that none of the factors of CS § 7–305—either independently or in some particular combination—is a *necessary or sufficient condition* of release. Instead, the factors are weighed against each other and taken as an undifferentiated but informative whole. Moreover, individual factors such as the circumstances surrounding the crime and victim impact statement give no objective direction as to how those factors should be considered, leaving commissioners with wide discretion in their ultimate determinations.[4] Appellant argues strenuously that CS § 7–305 and 7–307 afford him due process protections because they employ the words "must" and "shall," but those words create only "specific

---

4. While the Nebraska statute required that its Board of Parole *"shall order his release unless"* any of the four conditions that follow are true, our opinion does not rest on the statute's "positive" phrasing and would be the same if the statute were worded in the negative, *i.e.* that the State "shall *not* order his release *unless*" all of the four conditions were *false.*

directives" to *consider* the factors and to *issue a written decision* as prescribed. They are not "specific directives" instructing the MPC as to when, exactly, it must or must not *grant parole.*

For the foregoing reasons, the Maryland statutory scheme governing the MPC's consideration of parole does not create a liberty interest protected by the Fifth and Fourteenth Amendments. Thus, appellant's constitutional claims fail, and we affirm the judgment of the circuit court denying his petition for a writ of *mandamus.*[5]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**5.** Finally, we note that the record supports appellant's fundamental allegation that the MPC violated CS § 7–307 by failing to provide a written report of its findings within thirty days after appellant's hearing. (By contrast, the MPC's alleged failure to consider all factors under CS § 7–305 is a factual matter. The MPC's explanatory memorandum was silent as to several factors, leaving the trial court to determine whether they did not actually "consider" those factors or whether they "considered" those factors but did not find them persuasive. Presumably, the trial court here found the latter.)

But even if we excised this point and considered it independently of appellant's constitutional claims, appellant has provided neither statutory nor judicial authority entitling him to a new hearing or to expunge the MPC records as he requested in his petition for *mandamus.* Although the MPC's cursory compliance with CS § 7–305 and its failure to comply with CS § 7–307 constituted procedural violations, the legislature has not authorized redress to accompany the rules of procedure it set forth in the Correctional Services Article, which thus remains a "paper tiger."