*Aaron Dwayne Holly v. State of Maryland*, No. 1720, Sept. Term 2017.  Opinion filed on June 26, 2019, by Berger, J.


CRIMINAL PROCEDURE - CONSTITUTIONAL LAW - SENTENCING - PAROLE - JUVENILE OFFENDERS - LIFE SENTENCES - UNITED STATES CONSTITUTION

The Eighth Amendment to the United States Constitution does not form the foundation for the right to state-furnished counsel at parole hearings, public funds for experts, or judicial review of parole decisions for juvenile homicide offenders sentenced to life in prison with parole.  Assuming *arguendo* that there is a Fourteenth Amendment Due Process liberty interest in parole for juvenile homicide offenders, due process is satisfied when an inmate is given an opportunity to be heard and a statement of the reasons for the denial.  The laws governing parole in Maryland provide far greater procedural protections than those required by the Fourteenth Amendment.

CRIMINAL PROCEDURE - CONSTITUTIONAL LAW - SENTENCING - PAROLE - JUVENILE OFFENDERS - LIFE SENTENCES - MARYLAND DECLARATION OF RIGHTS

Articles 24 and 25 of the Maryland Declaration of Rights do not form the foundation for the right to state-furnished counsel at parole hearings, public funds for experts, or judicial review of parole decisions for juvenile homicide offenders sentenced to life in prison with parole.  Article 25 encompasses the same protections as the Eighth Amendment and does not provide any broader protections than those guaranteed under the United States Constitution.  The right to counsel under Article 24 is triggered by individuals facing the risk of incarceration, not individuals already convicted of a crime and sentenced to a period of incarceration.

Circuit Court for Baltimore County
Case No. 03-K-02-2636

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1720

September Term, 2017

_____

AARON DWAYNE HOLLY

v.

STATE OF MARYLAND

_____

Berger,
Arthur,
Beachley,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  June 26, 2019

.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 2004, following a jury trial in the Circuit Court for Baltimore County, Aaron Dwayne Holly ("Holly") was convicted of first-degree premeditated murder, first-degree felony murder, and use of a handgun in the commission of a crime of violence. His convictions stem from the murder of Tanya Jones-Spence on June 7, 2002. Holly was sentenced to life imprisonment without parole, and his convictions were affirmed by this Court on direct appeal. *Holly v. State*, No. 2283, Sept. Term 2004 (unreported opinion filed July 30, 2007). Holly was seventeen at the time of the murder.

Following the decision of the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), Holly filed a motion to correct what he alleged to be an illegal sentence on March 4, 2015. In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.* at 465. In his motion, Holly asserted that his sentence was unconstitutional because the sentencing court had not considered his youth prior to sentencing him to life without parole. The circuit court summarily denied Holly's motion on April 15, 2015 without a hearing or explanation.

Holly noted an appeal. While Holly's appeal was pending, the Supreme Court issued its opinion in *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). In *Montgomery*, the Supreme Court held that *Miller* applies retroactively. Before this Court, the State agreed that Holly's life without parole sentence should be vacated. We reversed the circuit court and remanded the case for resentencing. *Holly v. State*, No. 408, Sept.

Term 2015 (unreported opinion filed June 28, 2016).[1] On remand, Holly was sentenced to life imprisonment with parole.

Holly again appealed to this Court, arguing that his sentence of life with parole is unconstitutional. For the reasons explained herein, we shall affirm.

## DISCUSSION

In this appeal, Holly asserts that his life sentence with parole is unconstitutional because it does not afford him a meaningful opportunity for release. Holly asserts that there is no meaningful opportunity for him to demonstrate maturity and rehabilitation and obtain release because Maryland's parole system does not provide a right to state-furnished counsel at parole hearings, public funds for experts, or judicial review of parole decisions.

Holly contends that the "substance" of his challenge derives primarily from *Graham v. Florida*, 56 U.S. 48 (2010) (holding that the Eighth Amendment bars a sentence of life in prison without parole for juvenile nonhomicide offenders); *Miller*, *supra*, 567 U.S. 460; and *Montgomery*, *supra*, 136 S. Ct. 718. Holly asserts that, as a juvenile homicide offender who has not been determined to be irreparably incorrigible, he is entitled to a parole hearing in which he receives a "meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation" pursuant to *Graham*, *supra*, 560 U.S. at 75. Holly contends that the following procedural rights are "integral" to the meaningful opportunity requirement:

---

[1] We set forth details regarding the circumstances of the murder of Ms. Jones-Spence in our prior unreported opinions. *Holly v. State*, No. 408, Sept. Term 2015 (unreported opinion filed June 28, 2016); *Holly v. State*, No. 2283, Sept. Term 2004 (unreported opinion filed July 30, 2007).

2

(1) state-furnished counsel and representation in which counsel is permitted to

  (a) represent the inmate at his parole hearing;

  (b) review and dispute all evidence considered by the parole commission on the record; and

  (c) be present when the inmate addresses the commission on the record;

(2) funds for experts; and

(3) meaningful judicial review.

Holly asserts that without these rights, his sentence of life with parole constitutes an unconstitutional *de facto* life without parole sentence.

Holly describes in detail the procedural framework of the Maryland parole system, particularly for inmates serving life sentences, as well as what he perceives to be the deficiencies in Maryland's parole system. For an inmate serving a life sentence, two Commissioners conduct the parole hearing, and, if both Commissioners agree that an inmate serving a life sentence is suitable for parole, the case is considered by the entire commission. COMAR 12.08.01.17A(7)(f). If a majority of the Commission agrees to recommend parole, it submits the recommendation to the Governor. Md. Code (1999, 2017 Repl. Vol.), § 7-301(d)(5)(i) of the Correctional Services Article ("CS"); COMAR 12.08.01.17A(7)(g).

Holly emphasizes that there is no statutory provision for state-furnished counsel for a "juvenile lifer" at any stage of parole release proceedings and explains that, even for inmates who obtain counsel, there are significant limitations on counsel's role in the

3

context of the parole system.  For example, counsel is not permitted to participate in the parole hearing.  COMAR 12.08.02.18C(1).[2]  Holly takes further issue with other aspects of the parole process, including that there is no provision for the recording of parole hearings before the two Commissioners for inmates serving life sentences, counsel is not entitled to a full review of the Commission's file, and counsel's participation in the resolution of disputed facts prior to the parole hearing is limited.  Holly further emphasizes that there are no provisions for participation by counsel when a juvenile lifer's case is considered by the entire Commission or when parole is recommended to the Governor. Holly further contends that there is no provision granting a juvenile lifer the right to obtain funds for experts, and there is no opportunity for judicial review of the Commission's or the Governor's decision to deny parole.  Holly asserts that these alleged deficiencies in the parole system render his sentence unconstitutional.

---

[2] COMAR 12.08.02.18C(1) provides:

> A parole hearing is actually an interview of the inmate, and attendance shall be restricted to parole personnel and a representative of the institution.  On occasions, others may be invited by the Commission to attend, provided their attendance does not impede the prisoner being interviewed.  The hearings are private and shall be held in an informal manner, allowing the prisoner the opportunity to give free expression to his views and feelings relating to his case.  Formal presentations by an attorney, relatives, and others interested are not permitted at the parole hearings.  Attorneys, relatives, and others who are interested in the inmate may discuss the relative merits or other factors of the case with the Commission at its executive offices, any time before or after a parole hearing.

4

First, we briefly summarize the Maryland authority on the issue of juvenile life sentences. The Court of Appeals addressed the application of *Miller* and *Montgomery* to sentences of life imprisonment with parole for juvenile homicide offenders in *Carter v. State*, 461 Md. 295 (2018), *reconsideration denied*, October 4, 2018. The issue before the Court in *Carter* was whether a sentence of life with the possibility of parole is "effectively . . . life without parole, because the laws governing parole in Maryland do not provide [an inmate] with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 307.

Although the *Carter* Court did not address the specific arguments made by Holly in the present case with respect to purported rights to counsel, public funds, and judicial review, the Court rejected the theory that a life with parole sentence was a *de facto* life without parole sentence. The Court of Appeals held that the petitioner juvenile homicide offenders' life sentences with parole were legal because "the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.* at 307.[3]

_____

[3] The *Carter* Court explained that its holding was based upon the laws governing parole decision-making and not based upon how the laws have been carried out. 461 Md. at 337 ("To the extent that [the Petitioners] are challenging the actual practice of the Parole Commission and the Governor in making parole decisions, their claims are outside the scope of a motion to correct an illegal sentence. We thus agree with the Court of Special Appeals that whether the Parole Commission and others involved in the parole system are carrying out their duties in practice is not at issue in this appeal.") (footnote omitted). The Court observed that "other causes of action are more appropriate to litigate claims that the

5

Holly acknowledges that his appeal is, like *Carter*, based on the laws and regulations governing the Maryland parole system and the structure of the parole system in Maryland, but he asserts that his appeal focuses on "counsel's role in the parole process, and the related role of expert witnesses, as well as the role of judicial review," rather than the Governor's role that was addressed in *Carter*. We are not persuaded by Holly's attempt to distinguish this case from *Carter*. Indeed, the *Carter* Court expressly held that the "laws governing parole of inmates serving life sentences in Maryland . . . on their face allow" a juvenile lifer "a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.* The laws governing parole held to be constitutional in *Carter* include the various alleged deficiencies asserted by Holly on appeal.

Even if *Carter* were not dispositive on this issue, Holly's appellate claim fails because the authority cited by Holly does not provide support for the constitutional rights he demands. As we shall explain, there is no basis for the rights asserted by Holly under the United States Constitution or Maryland Declaration of Rights. Finally, although Holly cites a Massachusetts case reaching the result advocated by Holly in this appeal, there is no authority to support such a result in Maryland.

---

Parole Commission and others involved in the parole system are not carrying out their responsibilities." *Id.* The Court further commented that several of these claims are currently being litigated in the United States District Court for the District of Maryland in a lawsuit brought pursuant to 42 U.S.C. § 1983. *Id.* at 337 n.26; *see also Maryland Restorative Justice Initiative et al. v. Hogan et al.*, No. 16-01021-ELH (D. Md.).

**I.**

We first address whether the rights Holly advocates have any foundation in the United States Constitution. A brief discussion of the United States Supreme Court caselaw on issues relating to life sentences for juvenile offenders is necessary to provide the proper context for our analysis. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that the Eighth Amendment bars a sentence of life in prison without parole for juvenile offenders convicted of any crime other than homicide. The Supreme Court first addressed the issue of under what circumstances a juvenile homicide offender may be sentenced to life in prison without the possibility of parole in *Miller*, *supra*. The *Miller* Court held that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479 (emphasis added). The Court did not prohibit life sentences without parole categorically, but commented that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* The Supreme Court did "not foreclose a sentencer's ability to make that judgment in homicide cases," but the Court "require[d the sentencing court] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

In *Montgomery*, *supra*, the Court further explained that "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." 136. S. Ct. at 735. The primary issue before the Court in *Montgomery* was whether the *Miller* holding was entitled to retroactive effect. The Supreme Court held that *Miller*

7

announced a new substantive constitutional rule that was retroactive on state collateral review. 136 S. Ct. at 732. Although the *Montgomery* Court gave retroactive effect to *Miller*, the Court explained that this did "not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." *Id.* at 736. Rather, a *Miller* violation could be remedied "by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.*[4]

*Graham*, *Miller*, and *Montgomery* were all concerned with sentencing, and, specifically, about whether a sentence of life imprisonment without parole for juvenile offenders violated the Eighth Amendment. The cases addressed the issue of what constitutes a meaningful opportunity for release only in an extremely limited context. In *Graham*, the Supreme Court held "while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life." 560 U.S. at 75. The *Graham* Court expressly explained that "[i]t is for the State[s], in the first instance, to explore the means and mechanisms for compliance" with the meaningful opportunity for release requirement. *Id.* Indeed, the Court of Appeals observed in *Carter* that *Graham* held that "[t]here is no constitutional requirement that a state have a parole system *per se*, so long as the state provides a meaningful opportunity for release based on demonstrated

---

[4] Courts have reached different conclusions on the issue of whether *Montgomery* made *Miller* retroactive to all cases involving juveniles sentenced to life without parole or only to cases involving juveniles sentenced to life without parole pursuant to a mandatory sentencing scheme. The United States Supreme Court has granted certiorari to address this issue. *Mathena v. Malvo*, 893 F.3d 265 (2019), *cert. granted*, ___ S. Ct. ___ (U.S. Mar. 18, 2019).

maturity and rehabilitation." *Carter*, *supra* 461 Md. at 318. *Graham* established the meaningful opportunity requirement, but was silent as to its requirements.

Nor did the Supreme Court explicate the meaningful opportunity requirement in *Miller* or *Montgomery*. The phrase "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" appears only once in *Miller*, *supra*, 567 U.S. at 479, in the context of an explanatory parenthetical following a citation to *Graham*, *supra*, 560 U.S. at 75. In *Montgomery*, the Supreme Court did not address the meaningful opportunity requirement at all, but instead addressed the remedy for a *Miller* violation, explaining that "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." 136 S. Ct. at 736. It is these limited references to a juvenile offender's meaningful opportunity to obtain release that Holly asserts form the basis for the rights to state-furnished counsel's participation at a parole hearing, state funds for experts, and judicial review of parole decisions.

Holly asserts that he has a liberty interest in a meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation that implicates the Due Process Clause of the Fourteenth Amendment and that due process requires the procedural rights he asserts. In our view, Holly's assertion that a foundation for the specific procedural rights he seeks can be found in *Graham*, *Miller*, and *Montgomery* is tenuous at best given the limited discussion in those cases of the meaningful opportunity requirement. Indeed, in *Graham*, the Supreme Court expressly emphasized that states are not required "to

9

guarantee eventual freedom" for offenders. 560 U.S. at 75. The United States Court of Appeals for the Fourth Circuit recently rejected a juvenile homicide offender's contention that "*Miller* and its lineage give rise to a constitutionally protected liberty in juvenile-specific Eighth Amendment protections," holding that "juvenile-specific Eighth Amendment protections do not apply" to juveniles sentenced to life with parole. *Bowling v. Director, Virginia Dep't of Corr.*, 920 F.3d 192, 199 (2019). Because, like Holly, the appellant in *Bowling* was sentenced to life with parole, the court determined that it "need not decide whether the rights articulated by *Miller* and its lineage trigger liberty interests." *Id.*

Although the Fourth Circuit jurisprudence on this issue is persuasive, it is not binding, and we are mindful that arguments have been made that the Supreme Court's decisions in *Graham*, *Miller*, and *Montgomery* established such a liberty interest for juvenile offenders sentenced to life with parole. *See* Sarah French Russell, *Review for Release: Juvenile Offenders, State Parole Practices, and the Eighth Amendment*, 89 IND. L.J. 373, 417 (2014) ("*Graham*'s Eighth Amendment requirement that states provide a 'meaningful' and 'realistic' chance of release could be seen as creating a liberty interest for juvenile offenders in release -- regardless of whether applicable state statutes have otherwise created such an interest."). We need not determine whether a liberty interest in parole for juvenile offenders was created in *Graham*, *Miller*, *Montgomery* because, as we shall explain, even if we assume *arguendo* that *Graham*, *Miller*, and *Montgomery* established a due process protected liberty interest in parole for juvenile homicide

10

offenders, the Fourteenth Amendment does not require the procedural rights sought by Holly in this appeal.

In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12 (1979), the Supreme Court addressed the due process implications of a state parole statute that created an "expectancy of release" upon the fulfillment of certain conditions.[5] The Court held that in those circumstances, inmates have a due process liberty interest in parole that includes certain procedural rights. *Id.*; *Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987). The Court has held that due process is satisfied when inmates are given "an opportunity to be heard," and, if parole is denied, "a statement of the reasons" for the denial. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (per curiam) (citing *Greenholtz*, *supra*, 442 U.S. at 16).

In *Greenholtz*, the Supreme Court held, contrary to the inmates' contentions, that a formal hearing was not required in order for the parole system to comply with the Due Process Clause of the Fourteenth Amendment. 442 U.S. at 15-16. The Court reasoned that the Nebraska parole system, which included an examination of the inmate's file and a personal interview at which the inmate was permitted to present the parole board with letters and statements on his behalf, "affords an opportunity to be heard" as required by the Due Process Clause. *Id.* The Court further rejected the inmates' assertion that the Parole Board should be required to specify the particular evidence underlying the Board's decision

---

[5] Inmates generally have no such liberty interest in parole in Maryland. "Parole in Maryland . . . is not explicitly conditioned on some particular combination of findings" and, therefore, "the Maryland statutory scheme governing . . . parole does not create a liberty interest protected by the Fifth and Fourteenth Amendments." *McLaughlin-Cox v. Maryland Parole Comm'n*, 200 Md. App. 115, 124-25 (2011).

to deny parole, observing that "when parole is denied," the Board "informs the inmate in what respects he falls short of qualifying for parole." *Id.* at 16. The Supreme Court held that the Nebraska parole system "affords the process that is due" and "[t]he Constitution does not require more." *Id.* The *Greenholtz* standard has been reaffirmed by the Supreme Court, most recently in 2011. *Swarthout*, *supra*, 562 U.S. at 220-22. The Court commented in *Swarthout* that "[i]n the context of parole, we have held that the procedures required are minimal." *Id.* at 220.

The parole system in Maryland provides far more procedural protections than the "minimal" protections held to be sufficient for compliance with the Fourteenth Amendment by the Supreme Court. The Court of Appeals discussed the Maryland parole system at length in *Carter*, describing many of the procedural safeguards afforded to inmates eligible for parole in Maryland. We set forth the Court of Appeals' discussion from *Carter* below:

> The Maryland Constitution provides that "[t]he General Assembly of Maryland shall have the power to provide by suitable general enactment . . . for the release upon parole in whatever manner the General Assembly may prescribe, of convicts imprisoned under sentence for crimes." Maryland Constitution, Article III, § 60(c). The General Assembly has exercised that constitutional authority by creating the Maryland Parole Commission and enacting statutes governing the process by which an inmate can seek release on parole. *See* Maryland Code, Correctional Services Article ("CS"), § 7-101 *et seq.* Pursuant to legislative direction, the Parole Commission has adopted regulations governing its policies and activities with respect to parole. CS § 7-207; COMAR 12.08.01.
>
> *Eligibility for Parole*
>
> Parole is the conditional release of an inmate from confinement pursuant to a decision or recommendation of the Parole

12

Commission. *See* CS § 7-101(i); § 7-301 *et seq.* As a general rule, an inmate who is serving a sentence longer than six months becomes eligible for parole consideration after serving one-fourth of the inmate's aggregate sentence. CS § 7-301(a); COMAR 12.08.01.17A. There are a number of exceptions to that general rule, two of which are pertinent to this opinion.

First, if the inmate was convicted of a violent crime committed after October 1, 1994, the inmate is not eligible for parole consideration until the inmate has served one-half of the aggregate sentence for the violent crimes, or one-fourth of the aggregate sentence, whichever is greater. CS § 7-301(c)(1)(i); COMAR 12.08.01.17A(3).

Second, an inmate sentenced to life imprisonment with the possibility of parole is not eligible for parole consideration until the inmate has served 15 years (or the equivalent of 15 years taking into account diminution credits). CS § 7-301(d)(1); COMAR 12.08.01.17A(7). In certain cases in which the inmate was convicted of first-degree murder, the inmate may not be eligible for parole until the inmate has served 25 years (taking into account diminution credits). CS § 7-301(d)(2); COMAR 12.08.01.17A(7)(b).

*The Decision on Parole*

An eligible prisoner is to receive a parole hearing unless, following a review, the Parole Commission "determines that no useful purpose would be served by a hearing." COMAR 12.08.01.17A(1), (3). Hearings may be conducted by a hearing examiner employed by the Parole Commission or by a Commissioner, except that only Commissioners may conduct hearings in certain enumerated cases. CS §§ 7-204, 7-205. For an inmate serving a life sentence, two Commissioners conduct the initial hearing. COMAR 12.08.01.17A(7)(f).

As a general rule, the Parole Commission "has the exclusive power" to authorize the release of an inmate on parole. CS § 7-205(a)(1). However, the Parole Commission does not have the authority to grant parole directly to an inmate serving a life sentence. In a feature that distinguishes the parole system in Maryland from that in most other states, the Governor plays a role in cases where the inmate is serving a life sentence. CS § 7-206(3)(i); CS § 7-301(d)(4)-(5).

13

If both Commissioners who conduct the initial hearing agree that an inmate serving a life sentence is suitable for parole, the case is considered by the entire Parole Commission. COMAR 12.08.01.17A(7)(f), 23A. If the Parole Commission agrees by majority vote to recommend parole, it submits the recommendation to the Governor. CS § 7-301(d)(5)(i); COMAR 12.08.01.17A(7)(g). The Governor may approve or disapprove the Parole Commission's recommendation, but if the Governor does not do either within 180 days of receipt of the recommendation and the inmate has already served 25 years, the Parole Commission's recommendation becomes the effective decision on parole. CS § 7-301(d)(5)(ii-iii).

*Parole Considerations*

To determine whether an inmate is suitable for parole, the Parole Commission is to consider a number of factors, including the circumstances of the offense; the "physical, mental, and moral qualifications" of the inmate; the progress of the inmate during confinement; any drug or alcohol evaluation of the inmate (including the inmate's amenability to treatment); whether, if released, the inmate will be law-abiding; an updated victim impact statement and any victim-related testimony; any recommendations of the sentencing judge; and whether there is a substantial risk that the inmate will not abide by the conditions of parole. CS § 7-305; COMAR 12.08.01.18A(1)-(2).

If the inmate was a juvenile at the time of the offense, the Parole Commission's regulations require consideration of the following additional factors:

> (a) age at the time the crime was committed;
>
> (b) the individual's level of maturity and sense of responsibility at the time of [sic] the crime was committed;
>
> (c) whether influence or pressure from other individuals contributed to the commission of the crime;
>
> (d) whether the prisoner's character developed since the time of the crime in a manner that indicates the prisoner will comply with the conditions of release;

14

(e) the home environment and family relationships at the time the crime was committed;

(f) the individual's educational background and achievement at the time the crime was committed; and

(g) other factors or circumstances unique to prisoners who committed crimes at the time the individual was a juvenile that the Commissioner determines to be relevant.

COMAR 12.08.01.18A(3).

Under the statute, neither the general considerations governing all decisions of the Parole Commission, nor the special considerations relating to the juvenile offenders, apply to the Governor's decision to approve or disapprove parole for an inmate serving a life sentence. However, the Governor recently issued an executive order setting forth the factors that the Governor is to consider in approving or disapproving parole for an inmate serving a life sentence and providing for a written decision by the Governor concerning the application of those factors.

*2018 Executive Order concerning Governor's Decisionmaking*

On February 9, 2018, the Governor issued an executive order that formally set forth how he would exercise his discretion under CS § 7-301(d)(4)-(5) to approve or disapprove a recommendation from the Parole Commission for parole of an inmate serving a life sentence. *See* 45:5 Md. Reg. 261 (March 2, 2018), codified at COMAR 01.01.2018.06 ("the 2018 Executive Order").

The 2018 Executive Order provides that "the Governor shall assess and consider . . . the same factors and information assessed by the . . . Parole Commission as provided by the . . . Parole Commission's governing statutes and regulations," as well as "other lawful factors deemed relevant by the Governor." COMAR 01.01.2018.06A. In particular, with respect to a juvenile offender serving a life sentence, the 2018 Executive Order provides that the Governor will specifically consider:

15

- the juvenile offender's age at the time the crime was committed

- the lesser culpability of juvenile offenders as compared to adult offenders

- the degree to which the juvenile offender has demonstrated maturity since the commission of the crime

- the degree to which the juvenile offender has demonstrated rehabilitation since the commission of the crime

COMAR 01.01.2018.06C(1).

The 2018 Executive Order provides that, if the Governor disapproves a recommendation for parole, the Governor will provide a written decision confirming that the factors described in the executive order were considered and, in the case of a juvenile offender, stating the reasons for disapproving the Commission's recommendation. COMAR 01.01.2018.06B, C(2).

461 Md. at 318-23 (omissions and alterations in original) (footnotes omitted).

The statutes and regulations governing parole in Maryland provide additional procedural safeguards to inmates beyond those outlined by the Court of Appeals in *Carter*. For example, before a parole hearing, the Parole Commission "reviews all information available," including "a detailed report of the nature of the offense, a complete social history, employment record," and "a pre-parole summary containing a report of the inmate's institutional adjustment and progress during his incarceration or since his last appearance before the Commission." COMAR 12.08.01.17B(1). Inmates are entitled to written notice fifteen days prior to the hearing informing them of the "date, time, and place

16

of the hearing" and "[t]he factors which the Commission will consider in making its determination." COMAR 12.08.01.17C(1); CS § 7-303.

The inmate is also informed of the "[r]ight of the prisoner or a representative to examine and inspect before the hearing, any file, report, or other document to be used by the Commission in making its determination." *Id.* The inmate is generally entitled to, "on request, examine any document that the Commission or hearing examiner will use in determining whether the inmate is suitable for parole." CS § 7-303(b). Certain documents may be shielded from examination,[6] but if a document is not made available for examination, the Commission is required to notify the inmate of its decision and "on request and if appropriate, the Commission will provide the inmate or the inmate's representative with the substance of any information contained in the document or portion." CS § 7-303(b)(1). Upon the discovery of any errors, omissions, or disputed facts, the

---

[6] CS § 7-303(b)(1)(ii) provides:

> (ii) A document, or a portion of it, is not available for examination, if the Commission determines that:
>
> > 1. the document or portion contains a diagnostic opinion;
> >
> > 2. the inmate's knowledge of the document or portion would disrupt seriously a program of rehabilitation;
> >
> > 3. the document or portion contains sources of information obtained on a promise of confidentiality; or
> >
> > 4. the document or portion is otherwise privileged.

inmate's file may be adjusted by agreement with the parole agent. COMAR 12.08.01.17C(6)(a). The regulations provide for a process for the resolution of any disputes that cannot be resolved. COMAR 12.08.01.17C(6)(a)-(b).

Holly asserts that juvenile offenders are entitled to broader protections than those held to be sufficient for compliance with the Fourteenth Amendment in *Greenholtz*. In *Greenholtz*, 442 U.S. at 9-10, the Supreme Court distinguished the parole-release decision from the parole-revocation decisions at issue in *Morrisey v. Brewer*, 408 U.S. 471 (1972); and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). The *Gagnon* Court held that in certain cases, counsel must be provided in the parole-revocation context. 411 U.S. at 787-88. When holding that only minimal due process protections apply in the parole-release decision context, the *Greenholtz* Court emphasized the "crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." 442 U.S. at 9.

Holly asserts that the *Graham* requirement of a "meaningful opportunity to obtain release" requires broader protections than those afforded to inmates in *Greenholtz*. Holly emphasizes the *Greenholtz* Court's observation that "[i]f parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." *Id.* at 13. States do not, however, have the same freedom to altogether abandon parole in the context of juvenile homicide offenders serving life sentences without otherwise providing a meaningful opportunity for release in some manner. Indeed, abandoning parole entirely for juvenile offenders without providing an

18

alternate meaningful opportunity to obtain release would constitute a violation of *Graham's* meaningful opportunity requirement.[7]

In our view, keeping in mind that the procedural protections required for juvenile offenders may be greater than those held to be sufficient in *Greenholtz*, we are still persuaded that the parole procedures in Maryland provide a meaningful opportunity to obtain release for juvenile homicide offenders serving a life sentence. As outlined above, the parole procedures in Maryland provide far more protections for inmates, and particularly for juvenile inmates, than the minimal due process protections required by the Fourteenth Amendment as articulated by the Supreme Court in *Greenholtz*, *supra*. Furthermore, we find persuasive the United States Court of Appeals for the Fourth Circuit's reasoning in *Bowling*, *supra*, in which the court held that a juvenile homicide offender had a state liberty interest in parole consideration, but that due process was satisfied when the juvenile offender was provided with the opportunity to be heard and a list of reasons why he was found ineligible for parole. 920 F.3d at 200.

Assuming *arguendo* that *Graham*, *Miller*, and *Montgomery* establish a liberty interest in a "meaningful opportunity to obtain release" for juvenile offenders, the Due Process Clause of the Fourteenth Amendment requires no more than is already guaranteed

---

[7] States need not necessarily have a parole system so long as they offer a meaningful opportunity for release in some other manner. *Carter*, *supra*, 461 Md. at 318 ("There is no constitutional requirement that a state have a parole system *per se*, so long as the state provides a meaningful opportunity for release based on demonstrated maturity and rehabilitation.").

19

under Maryland law. We, therefore, reject Holly's assertion that his sentence of life imprisonment with parole violates the United States Constitution.

## II.

Holly further asserts that the Maryland Declaration of Rights provides the basis for the procedural rights he seeks. Holly contends that Articles 24 and 25 serve as the foundation for the right to state-funded counsel's participation in the parole process, public funds for experts, and judicial review of parole decisions. We are not persuaded by either argument.

Article 25 of the Maryland Declaration of Rights provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Holly concedes that Article 25 has been interpreted to encompass the same protections as the Eighth Amendment of the United States Constitution. Holly argues, however, that Article 25 should be interpreted more broadly in this context.

Holly contends that the use of the disjunctive phrase "cruel *or* unusual punishment" in Article 25 offers broader protections than the Eighth Amendment's use of the phrase "cruel *and* unusual." He cites the case of *Thomas v. State*, 333 Md. 84, 103 n. 5 (1993) in support of his assertion that such a reading is "not without support." The remainder of the quoted passage from *Thomas*, however, does not support Holly's Article 25 argument:

> The defendant's argument that we should afford greater protection under Article 25 of the Maryland Declaration of Rights than is afforded by the Eighth Amendment to the United States Constitution, based upon the disjunctive phrasing "cruel or unusual" of the Maryland protection, is not without support.

20

> *See People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866, 870-72 (1992) (phrasing of "cruel or unusual" in Michigan Constitution not accidental or inadvertent, and may constitute a compelling reason for broader interpretation of state constitution provision than that given Eighth Amendment clause). *See also Harmelin v. Michigan*, 501 U.S. [957, 966-67], 111 S. Ct. at 2687 (opinion of Scalia, J., and as to this part of the opinion joined by Rehnquist, C.J.) (contending that the conjunctive phrasing of the Eighth Amendment militates against the existence of a proportionality component as a part of that protection). Our cases interpreting Article 25 of the Maryland Declaration of Rights have generally used the terms "cruel and unusual" and "cruel or unusual" interchangeably. The Court of Special Appeals has suggested that "the adjective 'unusual' adds nothing of constitutional significance to the adjective 'cruel' which says it all, standing alone." *Walker*, *supra*, 53 Md. App. at 193 n. 9, 452 A.2d 1234. Because the prevailing view of the Supreme Court recognizes the existence of a proportionality component in the Eighth Amendment, we perceive no difference between the protection afforded by that amendment and by the 25th Article of our Declaration of Rights.

*Thomas*, *supra*, 333 Md. at 103 n.5.

Holly cites out-of-state cases supporting his position that a prohibition on "cruel or unusual" punishments is broader than the Eighth Amendment's prohibition on "cruel and unusual" punishments. Although other states have reached this conclusion, Maryland has not. We reiterated this position as recently as two years ago. *McCullough v. State*, 233 Md. App. 702, 747-48 n.34 (2017), *rev'd on other grounds sub nom.*, *Carter*, *supra*, 461 Md. 295. Indeed, in *McCullough*, we expressly rejected the argument that Article 25 offers broader protections than the Eighth Amendment:

> The "cruel or unusual punishments" clause of Article 25 of the Maryland Declaration of Rights has long been construed to have the same meaning as the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See*, *e.g.*, *Thomas*, 333 Md.

21

at 103 n.5, 634 A.2d 1 ("[W]e perceive no difference between the protection afforded by [the Eighth Amendment] and by the 25th Article of our Declaration of Rights"); *Walker v. State*, 53 Md. App. 171, 183, 452 A.2d 1234 (1982) (Eighth Amendment and Article 25 are construed to have the same meaning because "both of them were taken virtually verbatim from the English Bill of Rights of 1689"). Accordingly, there is no basis for the appellant's argument that he is afforded greater protections by Article 25 of the Maryland Declaration of Rights than by the Eighth Amendment.

*McCullough*, *supra*, 233 Md. App. at 747-48 n.34. We similarly reject Holly's Article 25 argument in this case.

Holly further asserts that the rights he asserts flow from Article 24 of the Maryland Declaration of Rights, which provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." As we shall explain, we are not persuaded that Article 24 guarantees the procedural rights Holly seeks in this case.

Holly correctly observes that Article 24 has been interpreted to provide a broader right to counsel than required by Article 21 of the Maryland Declaration of Rights or the Sixth Amendment of the United States Constitution. *See*, *e.g.*, *Rutherford v. Rutherford*, 296 Md. 347, 358 (1983). Holly's argument is principally based upon the case of *DeWolfe v. Richmond*, 434 Md. 444, 464 (2013) (*DeWolfe II*), in which the Court of Appeals held that "under Article 24 of the Maryland Declaration of Rights, an indigent defendant is entitled to state-furnished counsel at an initial hearing before a District Court

22

Commissioner."[8] In reaching this holding, the Court emphasized that it had previously "reaffirmed that the right [to counsel] attaches in any proceeding that may result in the defendant's incarceration." *Id.* at 461. The Court, quoting *Rutherford*, reiterated that it is the risk of incarceration that triggers the right to counsel:

> A defendant's *actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel* and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, *it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel* for indigents.

*DeWolfe II*, *supra*, 434 Md. at 460 (quoting *Rutherford*, *supra*, 296 Md. at 360-61) (emphasis added in *DeWolfe II*).

Unlike the arrested individuals appearing before District Court Commissioners in *DeWolfe II*, Holly has been convicted of a crime and sentenced to a period of incarceration. This distinction is critical. Even if we assume *arguendo* that Holly has a liberty interest in parole, it does not necessarily follow that the same rights afforded to arrestees risking incarceration in *DeWolfe II* apply to inmates convicted of and serving a sentence for first-degree murder. "There is a crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one desires." *Greenholtz*, *supra*, 442 U.S. at 9. It is the risk of incarceration that triggers the Article 24 right to counsel discussed in

---

[8] "The District Court Commissioner determines at the initial appearance, pursuant to Maryland Rule 4-216, whether a plaintiff is eligible for pretrial release. If a defendant was arrested without a warrant, the Commissioner determines whether there was probable cause for each charge and for the arrest. If there was no probable cause, the defendant is released with no conditions of release." *Id.* at 450.

*Rutherford* and reaffirmed in *DeWolfe II*. *DeWolfe II*, *supra*, 434 Md. at 461; *Rutherford*, 296 Md. at 360-61. We are not persuaded by Holly's attempt to extend the right to counsel analysis of *DeWolfe II* and *Rutherford* to the present case. Furthermore, Holly cites no authority that would support a conclusion that Article 24 provides the foundation for the right to public funds for experts or the right to judicial review of parole decisions. We hold, therefore, that Article 24, as interpreted by the Court of Appeals in *Rutherford* and *DeWolfe II*, does not provide the foundation for the procedural rights sought by Holly in this appeal.

### III.

Finally, we briefly address the Massachusetts case relied upon by Holly. In *Diatchenko v. Dist. Attorney for Suffolk Dist.*, 27 N.E. 3d 349, 354-55 (Mass. 2015) (*Diatchenko II*), the Supreme Judicial Court of Massachusetts held that juvenile homicide offenders sentenced to life imprisonment were entitled to the same rights sought by Holly at parole hearings, namely the right to state-furnished counsel, the right to funds for experts, and the right to judicial review of the parole board's decision.

The *Diatchenko II* Court's holding was premised not on federal law, but on the Massachusetts Declaration of Rights. *Id.* at 357. Indeed, the Massachusetts Supreme Court expressly commented that "[p]arole was not the subject of *Miller* and *Graham*; life *without* parole was." 27 N.E.3d at 357 n.14. The *Diatchenko II* Court then evaluated what was required under the Massachusetts Declaration of Rights in order to comply with the meaningful opportunity for release requirement. *Id.* at 361-68. As we explained *supra* in Part II of this opinion, there is no such basis for the rights Holly seeks in the Maryland

Declaration of Rights.  Accordingly, we reject Holly's invitation to adopt the reasoning of

the Supreme Judicial Court of Massachusetts.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**