*Michael Farmer v. State of Maryland*
No. 31, September Term 2021


**Criminal Procedure – Motion to Correct an Illegal Sentence – Cognizability.** A motion to correct an illegal sentence under Maryland Rule 4-345(a) addresses errors that are "inherent" in a sentence. It is not a vehicle for belatedly raising alleged errors in a trial or proceedings that resulted in the sentence, for challenging the administration of the sentence, or for generally litigating the procedures that may govern a future reduction of that sentence or the defendant's release from custody. Whether State-furnished counsel is available to assist an inmate in the parole process under current Maryland law does not inhere in the sentence of a defendant sentenced to life in prison with the possibility of parole. Therefore, a claim that a juvenile offender would be entitled to such assistance when that defendant becomes eligible for parole in the future is not cognizable under Maryland Rule 4-345(a).

Circuit Court for Baltimore City
Case Nos. 101243067, 101243072
Argued: January 6, 2022

IN THE COURT OF APPEALS
OF MARYLAND

No. 31

September Term, 2021

_____

MICHAEL FARMER

V.

STATE OF MARYLAND

_____

\*Getty, C.J.,
\*McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 26, 2022

\*Getty, C.J., and McDonald, J., now Senior Judges, participated in the hearing and conference of this case while active members of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, they also participated in the decision and the adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 10 simple words, Maryland Rule 4-345(a) provides that "[t]he court may correct an illegal sentence at any time." This provision is a necessary backstop to remedy a situation where a sentence in a criminal case that never should have been imposed or that is contrary to law escapes correction during the normal appeal and post-conviction process. However, a motion under the rule is not a vehicle to cure all ills in a criminal case that can be said, in some way, to be "illegal." An illegal sentence, for purposes of this rule, is one where the illegality "inheres" in the sentence; it is not every sentence where a failure to comply with a law affects the sentence in some way.

Petitioner Michael Farmer pled guilty in 2002 to committing two brutal murders when he was 17 years old. He was sentenced to two consecutive life sentences. As a result of those sentences and a consecutive sentence for an unrelated assault, he will not be eligible for parole, at the earliest, until he has served more than 25 years in prison. Supreme Court decisions issued during the past two decades have construed the ban on "cruel and unusual" punishments in the Eighth Amendment to the United States Constitution to require that sentences imposed on a juvenile offender like Mr. Farmer afford the offender a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" – a condition generally thought to be satisfied by the possibility of parole. Citing those cases, Mr. Farmer filed a motion to correct an illegal sentence in the Circuit Court for Baltimore City. He asserted that his sentence does not include the "meaningful opportunity" required by the Eighth Amendment because the Maryland parole laws do not provide a right to State-furnished counsel to assist an inmate during the parole process. Therefore, he asserts, his sentence is illegal.

The Circuit Court and the Court of Special Appeals rejected his various arguments supporting that claim. We hold that Mr. Farmer's claim does not fall within the category of claims cognizable under Rule 4-345(a).

# I

## Background

### A. The Maryland Parole System and Juvenile Offenders

The parole process in Maryland is overseen by the Maryland Parole Commission, a unit of the Department of Public Safety and Correctional Services ("the Department"). Maryland Code, Correctional Services Article ("CS"), §7-101 *et seq*. The Commission consists of 10 commissioners appointed by the Secretary of the Department, with the approval of the Governor and the advice and consent of the Senate. CS §7-202. The Commission has the "exclusive power" to authorize the release of an inmate on parole. CS §7-205(a)(1).[1] Among other things, the commissioners (and, in some cases, hearing examiners employed by the Commission) conduct parole hearings to consider the release of eligible inmates serving sentences in Maryland prisons. CS §§7-204(b)(2), 7-205. As directed by statute, the Commission has adopted regulations governing the parole process.

---

[1] Until recently, the Governor's approval was required for the release of an inmate serving a life sentence. *See Carter v. State*, 461 Md. 295, 320-23 (2018); CS §4-305(b)(3), §7-301(d)(4) (2017 Repl. Vol. & 2021 Supp.). Legislation enacted in 2021 eliminated the Governor's role in the parole process. Chapter 30, 1st Spec. Sess., Laws of Maryland 2021, *amending* CS §4-305, §7-301.

CS §7-207; COMAR 12.08.  Those regulations distinguish, to some extent, between adult and juvenile offenders.[2]

1.     General Considerations

For all parole-eligible inmates in Maryland, the Commission must consider a list of factors that assess the inmate's moral culpability, at both the time of the offense and the time of parole hearing, as well as the inmate's capacity to return to society as a productive and law-abiding person.  *See generally* CS §7-305; COMAR 12.08.01.18A.[3]  Accordingly, the Commission is to consider numerous factors and attributes of the inmate.  Some items concern the inmate's track record before incarceration, such as a prior criminal record, past use of controlled substances, and the circumstances surrounding the crime (although these circumstances "diminish in significance" after an initial parole hearing).  *See* COMAR 12.08.01.18A(5)(a),(e),(*l*).  Other items include an inmate's demonstrated improvement during incarceration, such as participation in institutional and self-help programs and "demonstrated emotional maturity and insight into the inmate's problems."  COMAR 12.08.01.18A(5)(b),(f).  Yet other items concern the inmate's present outlook, including

[2] Separate parole provisions, not relevant here, apply to juvenile offenders admitted to the Patuxent Institution as a person eligible for remediation.  CS §4-101 *et seq.*

[3] For a parole-eligible inmate, the general considerations listed by regulation include:  the circumstances surrounding the crime; the "physical, mental, and moral qualifications" of the inmate; whether there is reasonable probability that the inmate, if released, will not violate the law; whether the release is "compatible with the welfare of society"; whether there is substantial risk the individual will not conform to the conditions of parole; whether release would "depreciate the seriousness of the individual's crime or promote disrespect for the law"; whether release would have an adverse effect on institutional discipline; and whether continued incarceration would enhance the inmate's ability to lead a law-abiding life if released at a later date.  COMAR 12.08.01.18A(1)-(2).

the inmate's "current attitude toward society, discipline, and other authority" and "ability and readiness to assume obligations." COMAR 12.08.01.18A(5)(d),(j). Other items address an inmate's potential to succeed upon release, including vocational and educational training, employment plans and job potential, family status and stability, access to resources, and the "parole plan." COMAR 12.08.01.18A(5)(c),(h),(i),(k).

2.      Considerations Specific to Juvenile Offenders

To ensure that juvenile offenders serving life sentences with the possibility of parole have the constitutionally mandated "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,"[4] the Commission must also consider additional factors beyond what is normally required for adult offenders. *See* COMAR 12.08.01.18A(3)-(4). First, "[w]hen deciding if an inmate serving a life sentence for a crime committed while younger than 18 years old is suitable for parole, the Commission shall consider whether the inmate has adequately demonstrated maturity and rehabilitation since commission of the crime." COMAR 12.08.01.18A(3). Then, the Commission must consider mitigating factors regarding the inmate's circumstances at the time of the crime: the inmate's age, maturity, home environment, outside pressures, and educational background. COMAR 12.18.01.18A(4)(a)-(c),(e),(f). Additionally, the Commission must consider "whether the prisoner's character developed since the time of the crime in a manner that indicates the prisoner will comply with the conditions of release" and, as determined to be relevant, "other factors or circumstances unique to prisoners who

_____

[4] *See* Part I.B of this opinion concerning this constitutional requirement.

4

committed crimes at the time that individual was a juvenile." COMAR 12.18.01.18A(4)(d),(g).

3. Process

To assist the Commission in assessing the suitability for release of an inmate in a State correctional facility, the Division of Correction undertakes an investigation of the inmate. CS §7-301(a)(1).[5] An inmate eligible for parole is to receive a hearing unless, following a review, the Commission "determines that no useful purpose would be served by a hearing." COMAR 12.08.01.17A(1),(3). The Commission's regulations describe a parole hearing as follows:

> A parole hearing is actually an interview of the inmate, and attendance shall be restricted to parole personnel and a representative of the institution. On occasions, others may be invited by the Commission to attend, provided their attendance does not impede the prisoner being interviewed. The hearings are private and shall be held in an informal manner, allowing the prisoner the opportunity to give free expression to his views and feelings relating to his case. Formal presentations by an attorney, relatives, and others interested in the inmate are not permitted at the parole hearings. Attorneys, relatives, and others who are interested in the inmate may discuss the relative merits or other factors of the case with the Commission at its executive offices, any time before or after a parole hearing.

COMAR 12.08.01.18C(1). If a victim makes a timely request, a parole hearing is to be open to the public in accordance with the Commission's regulations. CS §7-304; COMAR 12.08.02. The hearing is to be electronically or stenographically recorded and, for a juvenile offender serving a life sentence, the recording is to be retained until the next parole

---

[5] For an inmate confined in a local correctional facility, the investigation is conducted by the Division of Parole and Probation. CS §7-301(a)(1).

5

hearing or the conclusion of any action seeking judicial review, whichever is later. COMAR 12.08.01.18C(2)-(4).

An inmate is to receive "adequate and timely written notice" in advance of the hearing. CS §7-303(a). The notice is to advise the inmate that the inmate – or the inmate's representative – may examine any document that the Commission or a hearing examiner will use in determining the inmate's suitability for release on parole. CS §7-303(b)(1)(i).[6]

For an inmate serving a life sentence, two commissioners conduct the parole hearing. COMAR 12.08.01.17A(7)(f). If the two commissioners do not agree whether an inmate should be paroled, the case is referred to a three-commissioner panel for decision by majority vote. CS §7-307(b). In either case, if the decision is in favor of parole for that inmate, the Commission *en banc* – defined as a majority of the commissioners – must consider the case. COMAR 12.08.01.17A(7)(f), 23A. For an inmate sentenced to life imprisonment for a crime committed after October 1, 2021, six commissioners must affirmatively vote in favor of parole for the inmate to be released on parole. CS §7-307(c).

A written decision is to be prepared and served upon the inmate. COMAR 12.08.01.18E(2). If parole is denied in a case involving a juvenile offender serving life imprisonment, the written decision must affirm that the Commission considered the "diminished culpability" and "hallmark features" of youth," as well as "an individual's capacity for growth and maturation." COMAR 12.08.01.18E(3)(b). In addition, the

---

[6] A document may be withheld from the inmate or the inmate's representative if it contains a diagnostic opinion, if disclosure would disrupt seriously the inmate's rehabilitation, or if it is confidential or otherwise privileged. CS §7-303(b)(1)(ii).

decision must include "specific findings as to why the inmate has failed to demonstrate suitability for parole" and state why the Commission "determined that the inmate has not yet demonstrated sufficient maturity and rehabilitation." COMAR 12.08.01.18E(3)(a),(c). Looking forward, the decision is to provide guidance on how the inmate may improve the likelihood of showing suitability for parole at a future hearing, provide specific recommendations for programming and treatment, if appropriate, and notify the inmate of any right to seek judicial review of the denial.[7] COMAR 12.08.01.18E(3)(d)-(f).

The Commission may neither permanently refuse parole to a juvenile offender serving a life sentence nor schedule a rehearing more than 10 years from the date of the previous hearing. COMAR 12.08.01.18E(12).

4. Assistance of Counsel

Under the Commission's regulations, counsel may assist an inmate with the parole process. Those regulations allow an inmate's legal representative to review the parole file and examine documents used by the Commission in its parole decision. *See* COMAR 12.08.01.17(C)(2),(5)(b). If the Commission conducts a fact-finding hearing regarding the inmate's application, counsel may be present and assist with the testimony and cross-examination of witnesses. COMAR 12.08.01.17(C)(6)(c)(iv). As indicated above, at the parole hearing itself, counsel may not make a formal presentation, but may discuss the case separately with the Commission before or after the hearing. COMAR 12.08.01.18C(1).

---

[7] The parole statute does not provide for a right to judicial review. At oral argument in this case, counsel suggested that judicial review may be available in some cases in a habeas corpus action or through administrative mandamus (Maryland Rule 7-401 *et seq.*).

The State does not furnish counsel to indigent inmates for hearings before the Commission.[8]

## B. Constitutional Limits on Sentencing of Juvenile Offenders

As summarized by this Court in *Carter v. State*, 461 Md. 295, 308-14, 317-18 (2018), the Supreme Court has recognized in several cases during the last two decades that the Eighth Amendment to the United States Constitution sets certain constraints on the sentencing of juvenile offenders who are convicted as adults. In a nutshell, under the Eighth Amendment's prohibition on "cruel and unusual" punishments, a court may not sentence a juvenile offender to death, *Roper v. Simmons*, 543 U.S. 551, 568 (2005), and for juvenile non-homicide offenders, a court may not sentence a juvenile offender to life without parole, *Graham v. Florida*, 560 U.S. 48, 75 (2010). The same is also true for the vast majority of juvenile offenders convicted of homicide. *Miller v. Alabama*, 567 U.S. 460, 479 (2012). In short, most juvenile offenders must be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75; *Miller*, 567 U.S. at 479. And, often, that "meaningful opportunity" comes through the availability of parole. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

In *Carter*, this Court recently addressed the constitutionality of the Maryland parole system for juvenile offenders serving life sentences. Like Mr. Farmer, the petitioners had challenged that system by way of a motion under Maryland Rule 4-345(a) to correct an

---

[8] An inmate who is paroled and later is charged with a parole violation that may lead to revocation of parole has a right to the assistance of counsel, including State-furnished counsel for eligible parolees. CS §7-401(b)(1); COMAR 12.08.01.22F(3).

8

illegal sentence. Two of the petitioners in that case, who had been sentenced to life imprisonment *with* the possibility of parole, argued that their sentences were illegal because the sentences were effectively life without parole in light of the facts that: (1) the Governor had the final say regarding parole for inmates serving life sentences; and (2) the pertinent statute did not require the Governor to take account of the criteria identified in the recent Supreme Court cases for release of juvenile offenders – or, indeed, any criteria at all. The petitioners in *Carter* highlighted that the system had resulted in very few parole releases, as even if the Commission recommended parole, the Governor could – and often did – determine otherwise.[9] As a result, they asserted, the Maryland parole system was effectively an executive clemency system in disguise, it failed to provide them with a meaningful opportunity for release, and their sentences violated the Eighth Amendment and were therefore illegal. 461 Md. at 340.

The Court held that a claim based on the Governor's statutory role in the parole process was cognizable in a motion under Rule 4-345(a), although it ultimately concluded that the petitioners' sentences were not illegal when related laws were taken into account. *Carter*, 461 Md. at 336-46. The Court recognized that the Governor's unfettered discretion

---

[9] In 1995, in the course of denying parole to several inmates serving life sentences, Governor Glendening declared that he would not approve the parole of any prisoner serving a life sentence unless the inmate was very old or terminally ill. *Carter*, 461 Md. at 323. Even in the absence of such a pledge by a Governor, parole of such inmates was rare. Between 2004 and 2017, the Commission recommended parole for only 14 juvenile offenders sentenced to life out of a population of more than 2,100 such inmates. Of these 14 inmates recommended for parole, only two were approved by the Governor for release. *See* Lila Meadows, *Realizing "Meaningful" in Maryland: A Call for Reforming Maryland's Parole System in Light of* Graham*, Miller*, *& Montgomery*, 48 U. Balt. L.F. 59, 63-64 (2018).

to adopt a no-parole policy would unconstitutionally deny juvenile offenders serving life sentences a meaningful opportunity for release. *Id.* at 341. But the Court also recognized that a 2018 Executive Order appropriately guided the Governor's decision within constitutional bounds, remedying the potential constitutional defect. *Id*. at 345. Thus, on the issue of whether the role of the Governor in the parole system violated the Eighth Amendment with respect to juvenile offenders, the Court concluded that "the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.* at 307, 336-46.[10] Since the *Carter* decision was issued, the General Assembly has eliminated the Governor's role in the parole of inmates serving life sentences.[11]

---

[10] The Court observed that allegations concerning how the laws governing parole were carried out in practice were not cognizable under a motion to correct an illegal sentence, although other remedies might be available. *Carter*, 361 Md. at 337 n.26, 346 n.34.

[11] *See* footnote 1 above. Other recent legislation has prospectively prohibited sentencing a juvenile offender to life imprisonment without the possibility of parole. Chapter 61, Laws of Maryland 2021, *codified in pertinent part at* Maryland Code, Criminal Procedure Article, §6-235.

## C. *Facts and Proceedings*

### 1. The Murders, the Guilty Plea, and the Sentencing

In two separate incidents in March and April 2001, Mr. Farmer, then age 17,[12] and two other teenagers robbed and murdered George Williams and Gerald Joseph Holle, both homeless at the time, in Baltimore City by beating them with a baseball bat and crowbar – an activity that the teenagers referred to as "bum-stomping." A statement of charges against Mr. Farmer concerning the murders was filed in the District Court sitting in Baltimore City on July 30, 2001, and a warrant was issued for his arrest. Shortly thereafter, Mr. Farmer was arrested at his home in Kansas, confessed to his participation in the murders, and was returned to Maryland. A grand jury in the Circuit Court for Baltimore City returned indictments superseding the statement of charges on August 31, 2001.

On September 5, 2002, Mr. Farmer pled guilty to two counts of first-degree murder in accordance with a written plea agreement that included a requirement that he testify at the trials of his two co-defendants. In exchange, the State agreed that it would not charge him with assaults on four other men in February and March 2001 and would recommend that the court impose two concurrent life sentences with all but 60 years suspended followed by five years of probation. The plea agreement included a condition that, if Mr. Farmer failed to fulfill his obligations under the agreement, "the State will recommend and

---

[12] The Circuit Court docket for this case and Case Search indicate that Mr. Farmer was born in February 1983 which, if correct, would mean that he was 18 at the time of the murders in March and April 2001. In the Circuit Court, defense counsel asserted that Mr. Farmer had actually been born in August 1983 – which also appears to be the birth date associated with him in the original charging document in the District Court. The State has not disputed that he was a juvenile at the time of the offenses in question.

the Court *shall* impose the maximum penalties for each and every offense to which the Defendant has pled guilty, *i.e.*, two consecutive life sentences." (emphasis in original).

In July 2003, Mr. Farmer was called as a witness at a pretrial hearing in the case of one of his co-defendants. He refused to testify or respond to any questions. His counsel filed a motion to withdraw his guilty plea, which the Circuit Court denied. A month later, after holding a hearing at which Mr. Farmer confirmed his refusal to testify, the Circuit Court found that Mr. Farmer had "clearly and unequivocally" failed to comply with his obligations under the plea agreement. The court sentenced him to two consecutive life sentences with the possibility of parole.

Mr. Farmer applied for leave to appeal, which the Court of Special Appeals denied. He also unsuccessfully sought post-conviction relief.

Currently, an inmate serving a life sentence becomes eligible for parole after serving "15 years of that sentence or the equivalent of 15 years considering … diminution" credits. CS §7-301(d)(1).[13] An inmate serving two consecutive life sentences, such as Mr. Farmer, must first serve 15 years (or the equivalent of 15 years considering diminution credits) with respect to each sentence before the inmate is eligible for parole. COMAR 12.08.01.17A(8)(a). Because Mr. Farmer has also received a consecutive 10-year sentence for first-degree assault, he must also serve half of that sentence (*i.e.*, five years) before he

---

[13] Recent legislation substituted "20 years" for "15 years" with respect to defendants convicted of an offense committed on or after October 1, 2021. Chapter 30, 1st Spec. Sess., Laws of Maryland 2021.

is eligible for parole.[14]  Thus, Mr. Farmer would likely be eligible for parole after serving something less than 35 years of his aggregate sentence.[15]

### 2. The Motion to Correct an Illegal Sentence and Appeal

In August 2014, Mr. Farmer filed a *pro se* motion to correct an illegal sentence under Maryland Rule 4-345(a).  Two years later, with the assistance of counsel, he filed a supplement to that motion and requested a hearing.  In filings in support of the Rule 4-345(a) motion, he argued that various aspects of the Maryland parole system denied him a meaningful opportunity for release and effectively converted his sentence into an unconstitutional life-without-parole sentence.  His primary argument, like that of the petitioners in *Carter*, was based on the Governor's role in the parole system at that time, but he also pointed to the absence of a right to counsel.[16]

---

[14] *See* CS §7-301(c)(1) (specifying parole eligibility for conviction of "violent crime"); CS §7-101(m)(1) (defining "violent crime" in part by cross-referencing definition of "crime of violence"); Maryland Code, Criminal Law Article, §14-101(a)(21) (defining first-degree assault as "crime of violence").  The first-degree assault conviction related to his stabbing a fellow inmate in 2008.

[15] As noted in the text, the precise date of parole eligibility for Mr. Farmer depends on the extent to which he earns and retains diminution credits during the course of his confinement.  *See* CS §3-701 *et seq*.  At oral argument in this case, the State represented that Mr. Farmer had approximately eight and one-half years of diminution credits, although those credits can be subject to revocation.  CS §3-709.

[16] He made these arguments in the supplement to his motion and a post-hearing memorandum.  Each pre-dated both the Governor's executive order concerning exercise of the Governor's parole authority and the *Carter* decision.  In addition to the claim that the parole system was effectively an executive clemency system for inmates serving life sentences, those filings faulted other aspects of the parole process:  (1) lack of a right to counsel; (2) lack of access to diagnostic opinions, psychological assessments, and risk assessments; (3) failure to record parole release hearings and detailed written findings

The Circuit Court denied the motion in a written order. *State v. Farmer*, Nos. 101243067, -072 (Dec. 19, 2016). Citing this Court's opinion in *State v. Kanaras*, 357 Md. 170 (1999), the court held that, because the alleged illegality did not "inhere in the sentence itself," a motion to correct an illegal sentence was not the appropriate vehicle for Mr. Farmer to challenge the "policies and procedures" of the Commission. *Id.*[17]

Mr. Farmer appealed. The State moved to dismiss the appeal, arguing that Mr. Farmer's claims were not yet ripe and were not cognizable in a motion to correct an illegal sentence under Maryland Rule 4-345(a). The Court of Special Appeals temporarily stayed his appeal, pending this Court's resolution of the *Carter* case. After the *Carter* decision was issued, the State withdrew its motion to dismiss. The intermediate appellate court then considered the case on the merits and affirmed the judgment of the Circuit Court in an unreported opinion. *Farmer v. State*, No. 2528, Sept. Term, 2016 (Md. Ct. Spec. App. July 2, 2019). The Court of Special Appeals concluded that *Carter* and its own decision in *Holly v. State*, 241 Md. App. 349 (2019), foreclosed Mr. Farmer's arguments based on

concerning denials of parole; and (4) lack of judicial review of adverse parole decisions. Only the argument concerning a right to counsel is before us in this appeal.

[17] After denying the motion on procedural grounds, the Circuit Court discussed in *dicta* the merits of Mr. Farmer's due process claims with respect to the parole process. While agreeing that juvenile non-homicide offenders enjoy enhanced due process protections in comparison to adult offenders, the court rejected Mr. Farmer's argument that a juvenile homicide offender has the same enhanced due process protections.

alleged deficiencies in the parole process, including his claim of a constitutional right to State-furnished counsel.[18]

Mr. Farmer filed a petition for a writ of *certiorari*, which we granted.

**II**

**Discussion**

Most of the issues raised in Mr. Farmer's *pro se* motion to correct an illegal sentence and in the supplemental filings by counsel during 2016 have been resolved by the *Carter* decision or changes in the law. His argument that the Governor's role in the parole process rendered his sentence illegal was rejected by the Court in *Carter* in light of the 2018 Executive Order, and, in any event, the Governor's role in the parole process has been eliminated by a statutory amendment in 2021. Many of his other procedural complaints

---

[18] In *Holly*, the defendant was convicted at a jury trial of first-degree murder committed when he was 17 and was originally sentenced to life in prison without the possibility of parole. 241 Md. App. at 351. Following the Supreme Court decisions in *Miller* and *Montgomery* and certain procedural steps, the trial court eventually vacated his sentence and resentenced him to life imprisonment *with* the opportunity for parole. *Id*. at 352. The defendant appealed this new sentence, arguing that it was still unconstitutional. Specifically, he argued that he would not have a meaningful opportunity for release because the parole system does not provide a right to State-furnished counsel at parole hearings, public funds for experts, or judicial review of parole decisions. *Id.* Without these rights, he asserted, his sentence was a *de facto* sentence of life without parole.

The Court of Special Appeals rejected those arguments. It concluded that the *Carter* decision settled the matter. It interpreted the *Carter* opinion as holding that the statute, regulations, and executive order governing parole, on their face, provided a juvenile offender serving a life sentence with a meaningful opportunity for release. 241 Md. App. at 355. Alternatively, the intermediate appellate court reasoned that, even if the *Carter* decision was not dispositive, it would still reject the defendant's argument that the Due Process Clause of the Fourteenth Amendment, or Articles 24 and 25 of the Maryland Declaration of Rights, conferred procedural rights in a parole hearing greater than those already provided by the Maryland parole laws. *Id.* at 356-71.

relating to issues such as access to risk assessments, recording of parole hearings, and the like have apparently been addressed in recent amendments to the Commission's regulations.[19]

The sole remaining issue pressed by Mr. Farmer is the contention that a juvenile offender serving a life sentence has a right to the assistance of State-furnished counsel at a parole hearing. A preliminary issue, however, is whether that contention is cognizable as the grounds for a motion to correct an illegal sentence under Maryland Rule 4-345(a).[20]

## A.    Standard of Review

Whether a sentence is illegal is a question of law – as is the question whether an alleged defect relating to a sentence is cognizable in a motion to correct an illegal sentence. Accordingly, an appellate court reviews a denial of a motion to correct an illegal sentence

---

[19] *See* Proposed Amendment of Regulations of the Parole Commission, 48:14 Md. Reg. 540 (July 2, 2021) ("These changes will provide a meaningful opportunity for release on parole, with the understanding that juvenile lifers do not have a liberty interest in being released on parole during their natural lifetime."); Final Action on Regulations, 48:19 Md. Reg. 802 (Sept. 10, 2021).

[20] Mr. Farmer briefly argued that the State had waived the question of cognizability because it had previously withdrawn a motion to dismiss his appeal on that ground that it had filed in the Court of Special Appeals in 2017. As noted above, that motion was filed at a time when Mr. Farmer's primary argument, like that of the *Carter* petitioners, related to the Governor's role in the parole process. The State withdrew its motion after this Court held in *Carter* that the issue related to the Governor's role was cognizable in a Rule 4-345(a) motion, but the State continued to argue that procedural issues like a right to State-furnished counsel were outside the scope of a Rule 4-345(a) motion. In any event, Mr. Farmer himself included the issue of the applicability of Rule 4-345(a) in his petition for *certiorari*, which we granted. In deciding that issue, we must inevitably consider whether his claim is cognizable under the rule.

*de novo*. *See Johnson v. State*, 467 Md. 362, 389 (2020); *State v. Crawley*, 455 Md. 52, 66 (2017).

**B.      *Whether Mr. Farmer's Claim is Cognizable under Rule 4-345(a)***

1.      Scope of a Motion to Correct an Illegal Sentence

Maryland Rule 4-345(a) authorizes a court to "correct an illegal sentence at any time."    That means that a defendant may ask a trial court to "correct" a sentence "notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, and (3) the sentence was not challenged in a timely-filed direct appeal." *Chaney v. State*, 397 Md. 460, 466 (2007).  Because Rule 4-345(a) allows collateral and belated attacks on a sentence and is not subject to waiver, it is well-established that its scope is narrow.  Otherwise, it would swallow the general rule of finality and allow repeated attacks on the underlying conviction.  It is limited to situations where there is some illegality inherent in the sentence itself or where no sentence should have been imposed in the first place. *Evans v. State*, 382 Md. 248, 278-79 (2004).

*Errors inherent in a sentence*

An inherent error occurs when the alleged error relates to the trial court's fundamental power or authority and the sentence should have never been imposed or the particular sentence was beyond the limits prescribed by statute or rule. *See, e.g.*, *Matthews v. State*, 424 Md. 503, 514-15 (2012) (motion to correct an illegal sentence appropriate when the trial court had unlawfully imposed a sentence that exceeded the penalty provided in a binding plea agreement in accordance with a Maryland Rule); *Alston v. State*, 425 Md. 326, 339, 341-42 (2012) (motion appropriate when trial court had unlawfully reopened a

17

terminated postconviction proceeding); *Ridgeway v. State*, 369 Md. 165, 171 (2002) (motion granted when the defendant was erroneously sentenced on three counts on which he was acquitted); *Holmes v. State*, 362 Md. 190, 195-96 (2000) (motion appropriate when trial court imposed a sentence of probation with home detention even though it lacked authority to do so); *Moosavi v. State*, 355 Md. 651, 662 (1999) (motion appropriate when the defendant had been charged, convicted, and sentenced under "an entirely inapplicable statute").

Of course, some claims attacking a sentence as inherently illegal may be cognizable in a motion under Rule 4-345(a), even though they are not meritorious. For example, in *Chaney*, the defendant filed a motion to correct his sentence under Rule 4-345(a), contending that probation conditions requiring that he pay restitution and maintain full-time employment or student status were illegal and lacked evidentiary support. This Court observed that there was "nothing intrinsically illegal about either condition" and the absence of an evidentiary foundation would not make them otherwise. 397 Md. at 467. To the extent that the claim focused on the lack of evidentiary basis for the probation conditions, that alleged defect was not cognizable in a motion under Rule 4-345(a). *Id.* at 467-68.

In *Carter*, the Court recognized as cognizable under Rule 4-345(a) a claim that the Governor's role in the parole process for inmates serving life sentences converted that process into an executive clemency system. Such a claim, if true, would mean that juvenile offenders serving life sentences would not have a meaningful opportunity for release required by the Eighth Amendment for juvenile offenders, in light of the Supreme Court's

holding that an executive clemency system was inadequate for that purpose. *Carter*, 461 Md. at 336-39. The Court concluded that the claim was cognizable because the Governor's discretionary veto "inhere[d] in a sentence of life with possibility of parole." *Id.* Ultimately, that claim failed as a result of the issuance of an executive order that cabined the Governor's discretion consistent with the Eighth Amendment.

*Errors not inherent in a sentence*

As illustrated below, a motion under Rule 4-345(a) is not a vehicle for belatedly raising any alleged error in the trial or proceedings that resulted in the sentence, for challenging the administration of the sentence, or for generally litigating the procedures that may govern a future reduction of the sentence or the defendant's release from custody.

• Trial errors. Various legal errors might *affect* or even *result in* a sentence, but if they do not *inhere* in the sentence, they cannot be challenged through a motion to correct an illegal sentence. *See, e.g.*, *Colvin v. State*, 450 Md. 718, 727-28 (2016) (clerk's failure to include foreperson in polling jury concerning verdict not cognizable in a motion to correct an illegal sentence); *Tshiwala v. State*, 424 Md. 612, 619-20 (2012) (collecting cases). There are various procedural vehicles for challenging the merits of a conviction, but a motion to correct an illegal sentence is not one of them. A motion to correct an illegal sentence "is not an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of judgment and sentence in a criminal case." *State v. Wilkins*, 393 Md. 269, 273 (2006); *Barnes v. State*, 423 Md. 75, 84 (2011) (the motion may not be used as "an end-run around appellate jurisdictional requirements"). Thus, in resolving a motion to correct an illegal sentence, a court does not question the underlying

19

conviction, but rather inquires only whether the resulting sentence is appropriate for that type of conviction.

- Procedural errors in sentencing. Procedural defects in the sentencing proceeding might affect the sentence, but the resulting sentence may still be lawful for the underlying conviction. A motion to correct an illegal sentence is not an appropriate vehicle to challenge such procedural errors. *See Colvin*, 450 Md. at 728. Thus, a Rule 4-345(a) motion cannot be used to challenge: ineffective counsel at a sentencing proceeding, *Evans*, 396 Md. at 273-76; a sentencing judge's failure to recognize the authority to suspend a life sentence, *Wilkins*, 393 Md. at 275-76; the denial of the victim's opportunity to speak, *Hoile v. State*, 404 Md. 591, 622-23 (2008); a sentencing review panel's lack of jurisdiction to reconsider the sentence, *Tshiwala*, 424 Md. at 618; or the failure of a sentencing judge to give credit for time served, *Bratt v. State*, 468 Md. 481, 500 (2020).

- Deficiencies in the administration of the sentence. A motion under Rule 4-345(a) cannot be used to challenge the administration of the laws relating to a sentence because such actions do not inhere in the sentence itself. For example, in *Kanaras*, the Court held that an inmate's life sentence was legal, even though the Parole Commission had allegedly failed to exercise the discretion that the pertinent statute required it to exercise in considering him for parole. 357 Md. at 185; *cf. Lomax v. Warden, Maryland Corr. Training Ctr.*, 356 Md. 569, 575 (1999) (holding that habeas corpus was an appropriate vehicle for challenging Governor's refusal to grant parole). The *Kanaras* Court explained that "[t]he illegality was in the conduct of the Parole Commission and the Commissioner of Correction; it did not inhere in Kanaras's sentence." 357 Md. at 185; *see also Carter*,

20

461 Md. at 346 n.34 (stating that a claim alleging that the Governor failed to appropriately exercise discretion to grant parole to inmates serving life sentences would *not* be cognizable as part of a motion under Rule 4-345(a)).

In short, Rule 4-345(a) provides a mechanism for correcting sentences that are illegal in light of the underlying conviction. It cannot be used to attack the merits of a conviction, to raise procedural errors at trial or in sentencing, or to litigate the administration of a sentence.

2.      Cognizability of Mr. Farmer's Claim under Rule 4-345(a)

A motion to correct an illegal sentence is not an appropriate vehicle for Mr. Farmer's claim. Mr. Farmer was convicted of two counts of first-degree murder. After he failed to comply with his obligations under his plea agreement, the trial court sentenced him in accordance with that agreement to two consecutive life sentences with the opportunity for parole. That sentence does not exceed any pertinent limit set by statute or rule, and no reason has been advanced that the sentence never should have been imposed. For a juvenile homicide offender, it is lawful and constitutional on its face. *See Montgomery v. Louisiana*, 577 U.S. 190 (2016). It is thus outside the scope of a motion under Rule 4-345(a) to correct an illegal sentence.

Mr. Farmer attempts to fit his claim within the scope of Rule 4-345(a) by drawing a parallel with the claim concerning the Maryland parole system found cognizable in *Carter*. He argues that the lack of availability of State-furnished counsel to assist him when he becomes eligible for parole in the future will effectively make it impossible for him to obtain release on parole. As a result, he contends, he has no meaningful opportunity for

release, his sentence is a *de facto* sentence of life without parole, and the sentence is therefore unconstitutional and illegal.

Mr. Farmer's claim is quite distinct from the claim made by the petitioners in *Carter* – and originally by Mr. Farmer in this case. The Governor's role in the parole system for inmates serving life sentences at the time *Carter* was decided was an inherent part of the parole element of the sentences that those inmates were serving. The Governor was the final decisionmaker as to whether an inmate would be released on parole. Before the 2018 Executive Order was issued, the Governor had unfettered discretion in making that decision. Under the statute, the Governor could – and at least in one instance did – decide never to grant release on parole, regardless of the merits of the particular case. Supreme Court precedent had held that such a system was one of executive clemency that, though legal for adult offenders, did not provide the meaningful opportunity for release that the Eighth Amendment requires for the sentences of most juvenile offenders. The claim made by the petitioners in *Carter* thus concerned the identity of the decisionmaker and the criteria (if any) that bound that the decisionmaker in deciding their suitability for parole. As the Court noted in *Carter*, the Governor's role in parole eligibility was "part of the law annexed to the crime at the time of a person's offense." *Carter*, 461 Md. at 338, quoting *Gluckstern v. Sutton*, 319 Md. 634, 667, *cert. denied*, 498 U.S. 950 (1990). Accordingly, a life sentence under that legal regime for most juvenile offenders potentially suffered from an inherent illegality. The claim in *Carter* was cognizable to determine whether the 2018 Executive Order had cured that illegality.

22

By contrast, Mr. Farmer's claim does not concern the identity of the decisionmaker when he is eligible for parole – his claim is not directed at the Commission – or the criteria that the Commission is to apply. On their face, the parole statute and regulations direct the commissioners to consider the same criteria identified in the Supreme Court's Eighth Amendment case law for determining the suitability of a juvenile offender for release on parole. Here his claim relates to the assistance that he may receive when he becomes eligible for parole. That is not baked into his sentence.

Put another way, it is not evident that assistance of State-furnished counsel is required to ensure that a sentence complies with the Eighth Amendment.[21] We note that the Supreme Court cases on the sentencing of juvenile offenders hold that a parole system provides the meaningful opportunity for release for those offenders without delving into the precise details of state parole systems.[22]

---

[21] No doubt, as Mr. Farmer's counsel has eloquently explained, there are many ways in which State-furnished counsel might enhance the chances that an indigent inmate would obtain release on parole. And it may well be that the law will evolve to recognize a right to such counsel under, for example, the due process principles of the State or federal constitutions. In this case, however, we are called upon to address whether the mechanism for making such arguments is a motion to correct an illegal sentence under Rule 4-345(a).

[22] In *Montgomery*, the Supreme Court stated, in passing, that a state may remedy a *Miller* violation by extending parole to all juvenile homicide offenders as an alternative to resentencing specific offenders sentenced in violation of *Miller*. As an example, the Court cited the Wyoming parole statute. 577 U.S. at 212. We note that, in a taxonomy of state parole systems compiled by one scholar, both Wyoming and Maryland are among the states that allow attorneys to provide some kind of direct input to parole authorities on behalf of an inmate and that neither state is among the few that provide state-furnished counsel to inmates. Sarah French Russell, *Review for Release: Juvenile Offenders, State Parole Practices, and the Eighth Amendment*, 89 Ind. L.J. 373, 402-03 & nn.189, 196 (2014). Of course, this observation is not dispositive of whether an inmate like Mr. Farmer has a right, from some source of law, to appointed counsel in a parole proceeding. It simply suggests

The fact that Mr. Farmer has not asserted a cognizable claim under Rule 4-345(a) does not foreclose other procedural vehicles that may be available to him to assert a right to State-furnished counsel during the parole process when he becomes eligible. For example, "any person …, whose rights, status, or other legal relations are affected by a statute, … administrative rule or regulation" may bring an action for a declaratory judgment for the determination of "any question of construction or validity … arising under the … statute … administrative rule or regulation … and obtain a declaration of rights, status, or other legal relations under it." Maryland Code, Courts & Judicial Proceedings ("CJ"), §3-406. The Declaratory Judgment Act contemplates that such actions may be brought to challenge the constitutionality of statutes or regulations. *See* CJ §3-405(c) (Attorney General to be served with action challenging constitutionality of statute).

Even so, "the declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise, or questions which have become moot, or merely abstract questions." *Hamilton v. McAuliffe*, 277 Md. 336, 340 (1976) (citations omitted). An action for a declaratory judgment is not "ripe" if it depends "upon a state of facts which has not yet arisen, or upon a matter which is future, contingent and uncertain." *State v. G & C Gulf, Inc.*, 442 Md. 716, 720-21 (2015) (internal quotation omitted).

At this time, any parole proceeding involving Mr. Farmer is some years – at least half a decade – in the future. Any deficiencies in that process are hypothetical. By that

---

that it was not an element that the Supreme Court considered necessary for a parole system to render sentencing of juvenile offenders compliant with the Eighth Amendment.

time, he may have the ability to hire counsel or find a lawyer who will represent him *pro bono*. Moreover, the laws and regulations governing the parole process may continue to evolve, as they have over the past decade. Finally, it is conceivable that he may be able to obtain the relief that he seeks in the interim under recent legislation known as the Juvenile Restoration Act ("JUVRA"),[23] rendering any complaint about the parole process moot. We turn next to whether JUVRA already renders his claim moot.

## C.     *Whether JUVRA Renders Mr. Farmer's Claim Moot*

The State moved, pursuant to Maryland Rules 8-602(c)(8) and 8-603(c), to dismiss Mr. Farmer's appeal on the ground that it is moot as a result of the General Assembly's recent enactment of JUVRA. Under a provision of that law, a juvenile offender sentenced prior to October 1, 2021, as Mr. Farmer was, may file a motion for reduction of a sentence after serving "at least 20 years for the offense." *See* Maryland Code, Criminal Procedure Article ("CP") §8-110 (2021). The State also notes that the Supreme Court decisions construing the Eighth Amendment constraints on the sentencing of juvenile offenders do not mandate that a state have a parole process, so long as there is some meaningful opportunity for release "by parole or otherwise." *Carter*, 461 Md. at 340. The State argues that, regardless of any deficiencies in the Maryland parole process, JUVRA provides the necessary meaningful opportunity for release and that Mr. Farmer's motion to correct an illegal sentence is therefore moot. In their briefs, the parties debate whether JUVRA provides an equal – or better – opportunity for release than parole.

---

[23] Chapter 61, Laws of Maryland 2021.

Our holding that Mr. Farmer's claim is not cognizable under Rule 4-345(a) makes it unnecessary to reach the State's motion to dismiss. There are a number of open questions concerning the application of JUVRA to this case that make it neither desirable nor in the public interest to address the State's argument at this point in Mr. Farmer's incarceration. For example, what is the timing for an inmate to file a motion to reduce a sentence when the inmate is serving an aggregate sentence comprised of consecutive periods of confinement, and which sentences are eligible for reduction at that time? Will indigent defendants who file motions under JUVRA have the assistance of State-furnished counsel? Does the discretion of a court to grant a motion to reduce a sentence under JUVRA correlate precisely with the Eighth Amendment's standard for a meaningful opportunity for release for most juvenile offenders?

It seems quite possible that JUVRA will provide a meaningful opportunity for release for most juvenile offenders serving lengthy sentences, as its sponsors and advocates intended.[24] In some respects, the parties seem to take the opposite positions from what one

---

[24] A sponsor of the Senate bill that was enacted as JUVRA remarked that the legislation would provide juvenile lifers an opportunity to be released from prison by proving they have reformed their lives and shown that "[r]edemption is possible." Written testimony of Senator Christopher West (March 26, 2021) submitted to the House Judiciary Committee concerning Senate Bill 494 (2021). In testimony before the House Judiciary Committee concerning the cross-filed House Bill, a retired circuit court judge noted that the federal Constitution requires that juvenile offenders have "a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" and opined that the bill would "alleviate that constitutional problem" and bring "Maryland into conformance with what the Supreme Court has mandated and what other states have already done." Testimony of Gary Bair on January 21, 2021, concerning House Bill 409 (2021), available at https://tinyurl.com/5xr5pn6f at 4:35:23. Testimony by other advocates for the bill, such as the Campaign for Fair Sentencing of Youth and the Maryland Catholic Conference, also

might otherwise expect in arguing whether the enactment of JUVRA moots Mr. Farmer's claim here.[25] There is no need for us to referee a philosophical boxing match in which the parties have switched corners when this Court – or the Legislature – likely will have answered the open questions concerning the application of JUVRA before Mr. Farmer's parole eligibility date.

## III

## Conclusion

Mr. Farmer was convicted of two counts of first-degree murder. The trial court sentenced him to two consecutive life sentences with the opportunity for parole. For a juvenile homicide offender, this sentence, on its face, is lawful and constitutional. The question whether he has a right to State-furnished counsel at a future parole hearing is not cognizable as grounds for a motion to correct an illegal sentence. Other procedural mechanisms, such as a declaratory judgment action, may permit Mr. Farmer to challenge parole procedures at the appropriate time, but that is not this case. Nor can we say, at this time, that JUVRA renders his claim moot.

---

equated the legislation with the standards set by the Supreme Court in *Graham*, *Miller*, and *Montgomery*.

[25] For example, the State suggests, but does not commit to, the idea that Mr. Farmer will be eligible to seek a reduction of sentence under JUVRA after serving 20 years of his aggregate sentence, well before his parole eligibility date, while Mr. Farmer suggests, but does not commit to, the idea that he will not be eligible to seek a reduction under JUVRA until he has served 40 years (20 years for each of his consecutive life sentences), which would be beyond the date of his eligibility for parole. Similarly, in his reply brief, Mr. Farmer suggests that he will not be able to appeal an adverse decision on a JUVRA motion, while the State conceded in brief and at oral argument that he would be able to do so.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**