**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-6170**

THOMAS FRANKLIN BOWLING,

Petitioner - Appellant,

v.

DIRECTOR, Virginia Department of Corrections,

Respondent - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Senior District Judge. (7:17-cv-00142-JLK-RSB)

Argued: January 29, 2019                                    Decided: April 2, 2019

Before THACKER and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Richardson and Judge Traxler joined.

**ARGUED:** Claire Cahill, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Brittany Marie Jones, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Erica Hashimoto, Director, Aaron M. Steeg, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Laura Haeberle Cahill, Assistant Attorney General, Toby J. Heytens, Solicitor General,

Matthew R. McGuire, Principal Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

_____

THACKER, Circuit Judge:

This appeal arises from the Virginia Parole Board's ("the Parole Board") repeated denial of parole to Thomas Franklin Bowling ("Appellant"). Appellant was sentenced to life with parole when he was 17 years old. He first became eligible for parole on April 26, 2005. The Parole Board has considered his eligibility and denied him parole annually ever since. Appellant alleges that, because the Parole Board was not specifically required to consider age-related characteristics unique to juvenile offenders when it has processed his parole applications, the Parole Board's repeated denial of his applications violated his Eighth and Fourteenth Amendment rights.

On that ground, Appellant initiated this action against the Director of the Virginia Department of Corrections ("Appellee"). Appellee moved to dismiss Appellant's complaint, and the district court granted Appellee's motion to dismiss. Regarding Appellant's Eighth Amendment claim, the district court held that juvenile-specific Eighth Amendment protections do not apply to Appellant because he was sentenced to life with parole. Regarding Appellant's Fourteenth Amendment claims, the district court held that the Parole Board procedures satisfy procedural due process requirements. For the reasons stated below, we affirm the decision of the district court.

I.

In 1988, Appellant was convicted of capital murder, robbery, marijuana possession, and two counts of use of a firearm in connection with his role in a botched robbery that resulted in a homicide. He was sentenced to two life sentences, plus six years and thirty days, with the possibility of parole. He was 17 years old at the time.

3

In 2005, Appellant became eligible for parole. Every year since 2005, the Parole Board has considered Appellant's eligibility for parole. Each of those years, the Parole Board "review[ed] and evaluat[ed] . . . all available information pertaining to [Appellant's] case" and decided "not to grant [Appellant] parole." J.A. 83–103.[1] Over the years, the Parole Board noted its reasons for denying Appellant parole as follows:

- **2005–2007**: "Serious nature and circumstances of the crime." J.A. 37–39.

- **2008–2009**: "Serious nature and circumstances of the crime," and "Prior offense history indicates disregard for the law." J.A. 40–41.

- **2010**: "Crimes committed," and "Serious nature and circumstances of the offense." J.A. 42.

- **2011**: "Serious nature and circumstances of the offense," "Crimes committed," and "Release at this time would diminish seriousness of crime." J.A. 43.

- **2012**: "History of violence -- indicates serious risk to the community," "Release at this time would diminish seriousness of crime," "Serious nature and circumstances of offense," and "Crimes committed." J.A. 44–45.

- **May 2013**: "Release at this time would diminish seriousness of the crime," "History of violence -- indicates serious risk to the community," "Poor institutional adjustment and/or record of institutional infractions indicate that offender is not ready to conform to society," "Extensive criminal record," and "Serious nature and circumstances of offense." J.A. 47.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

- **July 2013**: "Serious nature and circumstances of your offense(s)," and "The Board concludes that you should serve more of your sentence prior to release." J.A. 48.

- **2014**: "Release at this time would diminish seriousness of the crime," "Serious nature and circumstances of your offense(s)," and "The Board concludes that you should serve more of your sentence prior to release on parole." J.A. 50.

- **2015**: "Release at this time would diminish seriousness of crime," "Serious nature and circumstances of your offense(s)," and "Crime committed." J.A. 52.

- **2016**: "Release at this time would diminish seriousness of crime," "Crimes committed," "Serious nature and circumstance of your offense(s)," and "The Board concludes that you should serve more of your sentence prior to release on parole." J.A. 55.

Beginning in 2010, the Parole Board also noted that, in evaluating Appellant's eligibility for parole, it considered factors in addition to those it listed in its statement of reasons. Among other things, the Parole Board considered "whether [Appellant's] release would be compatible with public safety and the mutual interests of society and [Appellant]"; "whether [Appellant's] character, conduct, vocational training and other developmental activities during incarceration reflect the probability that [he] will lead a law-abiding life in the community and live up to all the conditions of parole"; "[Appellant's] personal history"; "[Appellant's] institutional adjustment"; "[Appellant's] change in attitude toward [himself] and others"; "[Appellant's] release plans"; "[Appellant's] evaluations"; "impressions gained . . . by the parole examiner"; and "any other information provided by [Appellant's] attorney, family, victims or other persons." J.A. 88–103.

5

On November 16, 2016, pursuant to Va. Code Ann. § 8.01-654, Appellant filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. He alleged that the Parole Board violated his Eighth and Fourteenth Amendment rights. On March 10, 2017, the Supreme Court of Virginia denied his claim. The court reasoned that a petition for a writ of habeas corpus is not the proper vehicle for challenging denials of discretionary parole.

On April 4, 2017, pursuant to 28 U.S.C. § 2254, Appellant filed a petition for a writ of habeas corpus in the Western District of Virginia. Three months later, the Commonwealth of Virginia ("the Commonwealth") moved to dismiss the petition, arguing that Appellant's claims were not cognizable as a habeas petition and, in any event, the Parole Board properly denied his requests for parole. On January 23, 2018, the district court granted the Commonwealth's motion. The district court first concluded that, because Appellant is serving a life sentence with the opportunity for parole, his sentence does not violate the Eighth Amendment. The district court then concluded that, because the Commonwealth's parole process satisfies the requirements of *Franklin v. Shields*, 569 F.2d 784, 790 (4th Cir. 1977) (defining the minimum due process requirements that parole proceedings must satisfy), Appellant failed to demonstrate that his parole proceedings violated the Fourteenth Amendment's Due Process Clause.

On August 23, 2018, this court issued Appellant a certificate of appealability on both Appellant's Eighth and Fourteenth Amendment claims.

II.

We review a district court's dismissal for failure to state a claim de novo. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013). In doing so, we assume the truth of the plaintiff's well-pled facts. *See Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001). We also draw all reasonable inferences in favor of the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

III.

A.

As a threshold matter, the Commonwealth asserts that Appellant's claims are not cognizable under 28 U.S.C. § 2254. The Commonwealth argues that Appellant's habeas petition is an inappropriate vehicle for Appellant's claims because Appellant is not seeking immediate release from custody. In response, Appellant invites the court to read his complaint as asserting a claim under 42 U.S.C. § 1983. The Supreme Court has held that prisoners may challenge the constitutionality of state parole procedures pursuant to § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Moreover, we read pro se pleadings liberally. *See Carter v. Fleming*, 879 F.3d 132, 137 (4th Cir. 2018). In line with that principle, this court has previously read § 2254 petitions as § 1983 complaints. *See, e.g.*, *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978). We accept Appellant's invitation and choose to do so here.[2]

---

[2] The State argued in its brief that we should not read the § 2254 petition as a § 1983 claim because a § 1983 claim would be dismissed immediately for failure to exhaust. The State claimed that Appellant had not filed a complaint under the Prison
(Continued)

B.

1.

*Appellant's Eighth Amendment Claim*

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Over the past decade, the Supreme Court has found that the application of certain punitive measures to juvenile offenders violates that clause. In *Roper v. Simmons*, the Supreme Court held that the Eighth Amendment prohibits capital punishment for juveniles. *See* 543 U.S. 551 (2005). In *Graham v. Florida*, the Court found that the Eighth Amendment prohibits sentencing juveniles who commit non-homicide offenses to life without parole. *See* 560 U.S. 48 (2010). Most recently, in *Miller v. Alabama*, the Supreme Court held that the mandatory imposition of life without parole sentences on juvenile offenders is cruel and unusual. *See* 567 U.S. 460 (2012). Although the punishment at issue in each of these cases has varied by degrees of severity and permanence, the "foundation stone" has not wavered: "children are constitutionally different from adults for the purposes of sentencing." *Id.* at 470 n.4, 471; *see also Montgomery v. Alabama*, 136 S. Ct. 718, 732 (2016). For that

---

Litigation Reform Act of 1995 ("PLRA"). But after the parties filed their briefs, Appellant moved to supplement the record with an administrative appeal from a parole decision, which demonstrated that Appellant did in fact file a complaint in line with the PLRA. *See* Mot. To Supp., *Bowling v. Dir. Va. Dep't Corr.*, No. 18-6170 (4th Cir. filed Dec. 10, 2018), ECF No. 33.

reason, certain punishments are cruel and unusual when applied to juveniles without consideration of age-related mitigating characteristics of juveniles. *See Montgomery*, 136 S. Ct. at 732.

Appellant asks this court to extend the Supreme Court's Eighth Amendment jurisprudence to juvenile parole proceedings and find that it is cruel and unusual punishment for a parole board to deny juvenile offenders parole without specifically considering age-related mitigating characteristics as a separate factor in the decision-making process. Granting that request would require us to extend the legacy of *Roper*, *Graham*, and *Miller* in two ways. First, we would have to find that juvenile-specific Eighth Amendment protections extend to juvenile homicide offenders sentenced to life with parole. And second, we would have to find that those protections extend beyond sentencing proceedings. We decline to go so far.

Significantly, the Supreme Court has placed no explicit constraints on a sentencing court's ability to sentence a juvenile offender to life with parole. The Court has not yet gone so far as to require that juvenile offenders be released from prison during their lifetime. *See Graham*, 560 U.S. at 75. ("A State is not required to guarantee eventual freedom to a juvenile offender . . . ."). That is to say, the Court "[did] not foreclose" the possibility that "the rare juvenile offender whose crime reflects irreparable corruption" could be sentenced to life without parole. *Miller*, 567 U.S. at 479–80. Rather, the Supreme Court required that, before sentencing a juvenile to life without parole, sentencing courts "take into account how children are different." *Id.* at 480.

9

Indeed, our sister circuits, deciding cases in the wake of *Miller*, have not yet agreed on whether, before sentencing a juvenile to a de facto life without parole sentence, sentencing courts must "take into account how children are different." *Id.* Some circuit courts have applied juvenile-specific Eighth Amendment protections to sentences that amount to the practical equivalent of life without parole. *See, e.g.*, *United States v. Grant*, 887 F.3d 131, 144 (3d Cir. 2018) (vacating a sentence under which a juvenile would become parole eligible at 72 years old, the same age as his life expectancy), *reh'g en banc granted, opinion vacated*, 905 F.3d 285 (3d Cir. 2018); *McKinley v. Butler*, 809 F.3d 908, 913–14 (7th Cir. 2016) (vacating a 100-year sentence imposed on a non-incorrigible juvenile offender); *Moore v. Biter*, 725 F.3d 1184, 1191–92 (9th Cir. 2013) (finding aggregate sentence of 254 years for a juvenile non-homicide offender is "materially indistinguishable" from the life sentence without parole and thus entitled to protection under *Graham*). But other circuits have held that juvenile-specific Eighth Amendment protections do not extend to such sentences. *See, e.g.*, *United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016) (finding a 600-month sentence "does not fall within *Miller*'s categorical ban on *mandatory* life-without-parole sentences" (emphasis in original)); *Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012) ("The Court in *Miller* did not hold that the Eighth Amendment categorically prohibits imposing a sentence of life without parole on a juvenile offender.") And even where circuit courts have found that the constraints of *Graham* and *Miller* apply to de facto life without parole sentences, those courts have only gone as far as to require parole boards to consider a juvenile's *eligibility for parole* within the juvenile's lifetime. *See, e.g.*, *Grant*, 887 F.3d

10

at 147 ("[W]e agree with the Government that the Supreme Court has not gone as far as to say that juvenile offenders must be afforded a right to a 'meaningful life' after prison -- in fact, neither *Miller* nor *Graham* even guarantees that a juvenile offender will ever be released from prison during his or her lifetime."). Given this disagreement about the application of the protections announced in *Miller* and its lineage to sentences that are practically equivalent to life without parole, we are satisfied that those protections have not yet reached a juvenile offender who has and will continue to receive parole consideration.

Further, to the extent that *Graham* and *Miller* require parole proceedings to provide juveniles a meaningful opportunity for release after sentencing, we are not persuaded that Appellant's parole proceedings fell below that standard. Here, the Parole Board has considered Appellant's eligibility for parole annually since 2005. In doing so, the Parole Board has considered "whether [Appellant's] release would be compatible with public safety and the mutual interests of society and [Appellant]," "whether [Appellant's] character, conduct, vocational training and other developmental activities during incarceration reflect the probability that [he] will lead a law-abiding life in the community and live up to all the conditions of parole," "[Appellant's] personal history," "[Appellant's] institutional adjustment," "[Appellant's] change in attitude toward [himself] and others," "[Appellant's] release plans," "[Appellant's] evaluations," "impressions gained . . . by the parole examiner," and "any other information provided by [Appellant's] attorney, family, victims or other persons." J.A. 88–103. The existing factors, therefore, allowed the Parole Board to fully consider the inmate's age at the time

11

of the offense, as well as any evidence submitted to demonstrate his maturation since then, and account for the concern at the heart of *Graham* and *Miller*: "that children who commit even heinous crimes are capable of change." *Montgomery*, 136 S. Ct. at 736. Although the bases of the Parole Board's denials have, so far, been linked to the severity of his crime, the record suggests that "there is a possibility that in time, [Appellant's] conduct and positive adjustment while in prison, when considered with all other factors, will outweigh the concerns that the Board has for the offense." J.A. 76.

Finally, the Supreme Court's reflection on the relief provided by *Miller* and its lineage persuades us that the Eighth Amendment promises juvenile offenders no further protections than those that Appellant has already received. In *Montgomery*, the Supreme Court suggested that, to remedy *Miller* violations retroactively, states need not resentence every juvenile offender entitled to *Miller* relief. *See Montgomery*, 136 S. Ct. at 736. Rather, states may remedy *Miller* violations by providing juvenile offenders the same protection that Appellant has already received: parole consideration. *See id.*

2.

*Appellant's Procedural Due Process Claims*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. That provision applies even to prisoners in state institutions. *See Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country."). But because "there must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution," *id.* at

12

556, a prisoner must identify a cognizable liberty interest before he can demonstrate a denial of due process. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . . ."). A prisoner can identify a cognizable liberty interest in one of two ways. The prisoner might have a liberty interest arising from the Constitution itself. *See, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (finding the Constitution gives rise to a liberty interest in avoiding involuntary psychiatric treatment). Or the prisoner might have a state-created liberty interest. *See, e.g.*, *Wolff*, 418 U.S. at 556–58 (finding a state-created system of time-served credit for good behavior gives rise to a liberty interest in avoiding withdrawal from that system).

Appellant asserts that he has a liberty interest arising from the Constitution and a state-created liberty interest. First, Appellant claims that, as a juvenile offender, he is "constitutionally entitled to the opportunity to reenter society as a mature adult." Appellant's Br. 33. Second, Appellant claims that "Virginia's parole scheme creates a statutory liberty interest in parole." *Id.* at 36. We disagree on both accounts.

There exists "no constitutional or inherent right" to parole proceedings. *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7 (1979); *see also Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991). Yet, Appellant would have this court find that the constitutional right announced by *Miller* and its lineage gives rise to a constitutionally protected liberty interest in juvenile-specific Eighth Amendment protections. However, because we find that juvenile-specific Eighth Amendment protections do not apply to

13

Appellant's life with parole sentence, we need not decide whether the rights articulated by *Miller* and its lineage trigger liberty interests.

Even where no liberty interest in parole arises from the Constitution, "[i]f a prisoner's term of imprisonment can be shortened or modified by rights conveyed to him under state law, those rights cannot be denied without due process." *Gaston*, 946 F.2d at 343. To establish a state-created liberty interest, Appellant must point to statutes or regulations that give rise to an expectation of that interest. In determining whether a state has created a liberty interest, the "threshold question" is whether such an interest "arise[s] from state policies or regulations." *Wilkinson*, 545 U.S. at 221–22; *see also Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015). For instance, in *Wolff*, the Supreme Court recognized that the state of Nebraska, through its prison regulations that systematically reduced minimum prison sentences as a result of good prisoner behavior, created a liberty interest in that reduction. *See* 418 U.S. at 556–58.

Because Virginia law gives rise to an expectation of parole proceedings, the Commonwealth has created a liberty interest in parole consideration.[3] Nevertheless, to satisfy the due process requirements triggered by this liberty interest, a parole board need only provide an offender an opportunity to be heard and a "statement of reasons

---

[3] Appellant points to no Virginia law or regulation that gives him a legitimate expectation of *release* on parole. Under Virginia law, eligibility for parole is a discretionary decision. *See* Va. Code Ann. § 53.1. And where parole eligibility hinges on the "discretionary decisions of parole authorities," parole applicants "possess no entitlement, but only a desire, that a parole board will decide in their favor." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996).

indicating . . . why parole has been denied." *Bloodgood v. Garraghty*, 783 F.2d 470, 473 (4th Cir. 1986). Appellant's parole proceedings satisfied those requirements. The Parole Board provided Appellant with annual opportunities to be heard. It also annually provided Appellant with a list of reasons why he was found ineligible for parole. Accordingly, Appellant's Fourteenth Amendment claim was properly dismissed.

## IV.

For these reasons, the judgment of the district court is

*AFFIRMED*.