[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12468

Non-Argument Calendar

_____

DAVID TIMOTHY MOORE,

Plaintiff-Appellant,

*versus*

GEORGIA BOARD OF PARDONS & PAROLES,
CHAIRMAN, STATE BOARD OF PARDONS AND PAROLES,
VICE CHAIRMAN, STATE BOARD OF PARDONS AND
PAROLES,
JACQUELINE BUNN,
Esq., Member,
DAVID HERRING, et al.
Member,

2                    Opinion of the Court                23-12468

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-01109-AT

———————————

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

David Timothy Moore, proceeding *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 claim for failure to state a claim pursuant to 28 U.S.C. § 1915A. Mr. Moore alleged in his complaint that *Graham v. Florida*, 560 U.S. 48 (2010), entitles him to "a meaningful and realistic opportunity to obtain release on parole based on demonstrated maturity and rehabilitation" as a juvenile offender, and argues that this claim is plausible.

Because Mr. Moore's complaint states a plausible claim for relief, we vacate and remand.

**I**[*]

———————————

[*] All the stated facts are taken from Mr. Moore's complaint because, at the motion to dismiss stage, we are required to "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Chua v. Ekonomou*, 1 F.4th 948, 952 (11th Cir. 2021).

In 1987, when Mr. Moore was 17 years old, a Georgia jury convicted him of armed robbery, aggravated assault, aggravated battery, and aggravated assault with intent to rob. He was sentenced to life imprisonment for the armed robbery count plus 20 years for each of the additional three counts. In May of 1988, the Georgia Board of Pardons and Paroles notified Mr. Moore that he would be considered for parole in 1994. In May of 1989, Mr. Moore was involved in an "inmate disturbance," during which Mr. Moore alleges twenty inmates "unprovokingly attacked" three inmates. Mr. Moore stabbed one of the attacking inmates and subsequently pled guilty to manslaughter in October of 1989 after being indicted for murder. Mr. Moore was sentenced to fifteen consecutive years for the manslaughter conviction. There was no change to Mr. Moore's upcoming parole consideration for May of 1994.

In June of 1994, following the May parole consideration, the Board denied parole based "on the circumstances and nature of the offense and multiple offenses." In May of 2002, Mr. Moore was again denied parole based "on the circumstances and the nature of the offense." In May of 2010, Mr. Moore was denied parole a third time due to the "severe nature of the offense." In March of 2014, Mr. Moore was denied parole for a fourth time because of the "severe nature of the offense." In April of 2018, the Board based Mr. Moore's fifth denial of parole on "insufficient time served to date given the nature and circumstances of [his] offenses." Most recently, in February of 2021, Mr. Moore was denied parole a sixth time, again because of "insufficient amount of time served to date given the nature and circumstances of [his] offense." Both the

penultimate and ultimate denials noted that Mr. Moore was "encouraged to continue in [his] rehabilitative efforts so [he] will be properly prepared in the event a future consideration results in [ ] transition back into society." Neither denial, however, provided any specifics about what rehabilitative steps Mr. Moore must take to have a meaningful chance at parole.

## II

The sixth denial of parole prompted Mr. Moore's complaint in this case, which he filed in March of 2023. In his complaint, Mr. Moore alleged a claim under 42 U.S.C. § 1983 against the Board and its members in their individual and official capacities. Mr. Moore cited to O.C.G.A. §§ 42-9-40(a), 42-9-42(c) to show that Georgia law requires guidelines for determining parole action, "except [for] those serving life sentences." This lack of guidelines, Mr. Moore asserts, violates his constitutional rights under the Eighth Amendment because juvenile offenders sentenced to life with the possibility of parole deserve a chance to show they have matured. Specifically, he contends there should be "criteria, standard(s), procedures(s) and/or guideline(s)" that make a distinction between juvenile and adult offenders sentenced to life imprisonment, and which "afford [ ] a meaningful and realistic opportunity to obtain release based on demonstrated maturity and rehabilitation."[1]

---

[1] Mr. Moore also argues that the district court erred in considering facts outside the four corners of his complaint. Because we vacate and remand on other grounds, we do not reach this issue.

Under 28 U.S.C. § 1915A, a court reviews a complaint in a civil action in which a prisoner seeks redress from an officer or employee of a governmental entity as soon as practicable. Pursuant to § 1915A, a magistrate judge issued a report and recommendation ("R&R") recommending that Mr. Moore's complaint be dismissed for failure to state a claim.

The R&R concluded that the Board was entitled to sovereign immunity, but that Mr. Moore could bring claims for declarative and injunctive relief against the Board's members. Regarding the merits, the R&R determined Mr. Moore failed to state an Eighth Amendment claim because the Board's decision was "merely a disappointment," rather than a decision that constituted cruel and unusual punishment. *See Slakman v. Buckner*, 434 F. App'x 872, 875 (11th Cir. 2011) (per curiam). Further, the R&R determined that *Graham*, 560 U.S. at 75, does not apply to juvenile offenders who were sentenced to life with the possibility of parole and who, as adults, were also sentenced for voluntary manslaughter. Additionally, the R&R explained Mr. Moore could not state a procedural due process claim because he had no liberty interest nor any constitutional right to parole, and the Board's decision to deny Mr. Moore parole did not violate his substantive due process rights because the Board is allowed to deny parole based on the nature and circumstances of the offense. Finally, the R&R concluded that Mr. Moore failed to state an equal protection claim. He had not alleged sufficient information to show that those who did receive parole were similarly situated because he did not provide

information regarding their criminal history, disciplinary record, or background.

Mr. Moore filed objections to the R&R, arguing that *Graham* affords juvenile non-homicide offenders sentenced to life with the possibility of parole more process and requires parole proceedings to distinguish between juvenile and adult offenders. Mr. Moore made the crux of his claim clear when he posed the following question in his objections: "Have the Defendants created a system or procedure within their parole process that complies with the Supreme Court's directive and holding that states must provide juvenile non-homicide offenders who are sentenced to life (not life-without-parole) some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation?"

After receiving Mr. Moore's objections, the district court adopted the R&R, noting that *Graham* did not say anything about the considerations the Board must make when determining whether to grant parole. It concluded that *Graham* stood only for the proposition that "the Eighth Amendment prohibits a life-without-parole sentence for a juvenile offender who did not commit homicide."

In determining that Mr. Moore "clearly has a 'meaningful' shot" at parole, the district court referred to the appellate decision relating to Mr. Moore's initial conviction. Both because the Board had considered Mr. Moore for parole six times and because Mr. Moore's original crimes were "extremely violent and chilling," the district court reasoned "there [wa]s nothing at all shocking or

outrageous" about the denials. Accordingly, Mr. Moore's "argument that he is somehow entitled to relief under *Graham* [wa]s simply wrong." Finally, the district court ruled that Mr. Moore's equal protection claim failed because Moore cannot credibly allege that there was not a rational basis for the board to deny him parole.[2]

### III

We review *de novo* a district court's dismissal of a complaint for failure to state a claim, "accept[ing] the allegations in the complaint as true and constru[ing] them in the light most favorable to the plaintiff." *Chua,* 1 F.4th at 952. Though *pro se* pleadings must provide a factual basis for a claim, they are construed liberally and held to less stringent standards than those drafted by attorneys. *See Jones v. Fla. Parole Comm'n,* 787 F.3d 1105, 1107 (11th Cir. 2015).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was committed or caused by a person acting under the color of state law. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

To prevent dismissal for failure to state a claim, a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain more than "labels and conclusions, and

---

[2] Because Mr. Moore disclaims any equal protection claim in his appeal, we do not address this part of the district court's opinion.

a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks omitted). A plausible claim allows a court to reasonably infer that the defendant is liable for the claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint, of course, must allege more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But the "plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678.

Mr. Moore alleges a violation of his constitutional rights based on a theory that appears to be an issue of first impression in our circuit. A district court "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even 'extreme.'" 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed. 2024). *See also Shull v. Pilot Life Ins. Co.*, 313 F.2d 445, 447 (5th Cir. 1963) ("It is perhaps ironic that the more extreme or even far-fetched is the asserted theory of liability, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition.").

Significantly, there is emerging disagreement among district and circuit courts about what impact, if any, *Graham* has on the rights of life-sentenced juvenile offenders with respect to parole. Some district courts have concluded that there is a plausible claim that *Graham* affords juvenile offenders additional parole

23-12468              Opinion of the Court              9

protections under the Eighth and Fourteenth Amendments, while others have definitively held that such offenders have definitive constitutional guarantees post-*Graham*. *See, e.g.*, *Greiman v. Hodges*, 79 F. Supp. 3d 933, 944 (S.D. Iowa 2015) (holding that "[c]onsidering the current procedural posture of the case, the Court agrees with Plaintiff that he has presented at least a plausible § 1983 claim"); *Swatzell v. Tenn. Bd. of Parole*, No. 3:18-CV-01336, 2019 WL 1533445, at *6 (M.D. Tenn. Apr. 9, 2019) (granting the plaintiff a right to amend because, "[b]ased on this line of cases, [he] may be able to state a similar Eighth Amendment claim"). *See also Hayden v. Keller*, 134 F. Supp. 3d 1000, 1010 (E.D.N.C. 2015) ("The court finds that the North Carolina parole process violates the Eighth Amendment as outlined in *Graham*."); *Flores v. Stanford*, No. 18 CV 2468 (VB), 2019 WL 4572703, at *9 (S.D.N.Y. Sept. 20, 2019) (holding that "*Graham*, *Miller*, and *Montgomery* vest in juvenile offenders sentenced to a maximum term of life imprisonment an Eighth Amendment right that attaches to those offenders' parole proceedings"). But two circuits, to an extent, have disagreed. *See Brown v. Precythe*, 46 F.4th 879, 886 (8th Cir. 2022) (declining to go so far as to "scrutinize in a civil rights action whether a State's parole procedures afford 'some meaningful opportunity' for release of a juvenile homicide offender," but finding that the relevant parole system was in any event not violative); *Bowling v. Dir., Va. Dep't of Corr.*, 920 F.3d 192, 199 (4th Cir. 2019) (determining that "the Supreme Court's reflection on the relief provided by *Miller* and its lineage persuades us that the Eighth Amendment promises juvenile offenders no further protections than those that Appellant has

already received"). That some courts agree with Mr. Moore, while others do not, renders his claim at this stage—at the very least—plausible.

Though we reach no ultimate conclusions as to the merits of Mr. Moore's claim, we find it helpful to lay out the basis for the claim. In *Graham*, the Supreme Court held that "the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender." 560 U.S. at 75. Though the Eighth Amendment "does not require the State to release that offender during his natural life," it does require states to give such juvenile defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.*

Does *Graham* require any meaningful opportunity to demonstrate maturity in the parole setting for juvenile offenders? There are two possible constitutional rights that could require an affirmative answer to this question. Each is premised on the same "meaningful opportunity" language provided in *Graham*, though they manifest differently.

First, the procedural component of the Eighth Amendment's prohibition on cruel and unusual punishment could be violated if juvenile offenders never have a meaningful opportunity to demonstrate maturity as dictated by *Graham*. One district court explained it this way: "If a juvenile offender's life sentence, while ostensibly labeled as one 'with parole,' is the functional equivalent of a life sentence without parole, then the State has denied that offender the 'meaningful opportunity to obtain release based on

demonstrated maturity and rehabilitation' that the Eighth Amendment demands." *Hayden*, 134 F. Supp. at 1009. *But see Brown*, 46 F.4th at 886 (declining to find such a constitutional command, but holding that the system in question satisfied it regardless).

Second, and relatedly, the meaningful opportunity decree from *Graham* could mandate additional process due only to juvenile offenders. There is no substantive constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). And Georgia's parole system does not create a legitimate expectation of parole such that there is a liberty interest in parole that is subject to due process protections. *See Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).

In the parole context, however, *Graham* might require a delineated parole process, a distinction between how adult and juvenile offenders are evaluated for parole, or a requirement that the age of an offender at the time of conviction be considered in parole proceedings. As one district court explained, regarding a similar case at the pleadings stage:

> [A]lthough *Graham* stops short of guaranteeing parole, it does provide the juvenile offender with substantially more than a possibility of parole or a 'mere hope' of parole; it creates a categorical entitlement to 'demonstrate maturity and reform,' to show that 'he is fit to rejoin society,' and to have a 'meaningful opportunity for release.'

*Greiman*, 79 F. Supp. 3d at 945 (citing *Graham*, 560 U.S. at 79). *But see Bowling*, 920 F.3d at 199 (concluding that the juvenile offender was afforded no protections than already received).

Here, as in *Greiman*, we do not read Mr. Moore's complaint to claim mere disappointment with the denial of parole, but rather construe the complaint to allege a more fundamental concern with the procedural dearth in Georgia's parole system. As noted, Georgia creates an exception to its requirement of parole guidelines for those sentenced to life, see O.C.G.A. §§ 42-9-40(a), 42-9-42(c), and Mr. Moore's own history of parole denials suggests nominal explanations purportedly without any meaningful path for rehabilitation. Again, we pass no judgment on the merits of Mr. Moore's claim—and need not do so—because "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Mr. Moore may have an uphill battle, especially given his manslaughter conviction as an adult, but at this stage we assess only plausibility—not probability. And, here, it is plausible that additional process is due to provide Mr. Moore "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75.

Because federal courts are divided on what additional process *Graham* affords juvenile offenders like Mr. Moore, he has plausibly stated a claim for relief in his complaint.

**V**

23-12468          Opinion of the Court          13

Mr. Moore's complaint plausibly alleges a violation of his constitutional rights under 42 U.S.C. § 1983. We therefore vacate and remand for further proceedings consistent with our opinion.

**VACATED AND REMANDED.**

23-12468                BRASHER, J., Dissenting                1

BRASHER, Circuit Judge, dissenting:

After committing armed robbery and aggravated assault and battery as a juvenile, David Moore was sentenced to life in prison with the possibility of parole. He then committed manslaughter in prison. He brings a Section 1983 claim against the Georgia Parole Board for denying him parole in alleged violation of his Eighth Amendment rights under *Graham v. Florida*, 560 U.S. 48 (2010). The district court dismissed the claim, but the majority reverses. I believe the majority is mistaken. The language of *Graham* limits its holding to those persons sentenced to life without the possibility of parole. Because Moore was sentenced to life with the possibility of parole, his claim under *Graham* fails as a matter of law. Because I believe the district court should be affirmed, I must respectfully dissent.

## I.

Only a few facts are relevant here. Moore was convicted as a juvenile for armed robbery and assault and battery. He was sentenced to life in prison with the possibility of parole. He later committed manslaughter in prison.

Moore has been considered for parole eligibility and denied six times. Eventually, he filed this pro se Section 1983 lawsuit against the Georgia Parole Board for violating his Eighth Amendment rights under *Graham* by denying him parole. The Georgia Parole Board has not been especially fulsome in its reasoning for denying Moore parole. But Moore does not identify any policy or procedure that makes the Georgia parole process unusual in

general or as applied to him. On this complaint, the problem Moore identifies is simply that he has been considered for parole and denied without a satisfactory explanation.

As part of pre-service screening under the Prison Litigation Reform Act, the district court dismissed Moore's lawsuit for failure to state a claim. This appeal followed.

## II.

The Prison Litigation Reform Act requires that a district court review "as soon as practicable" the complaint in a "civil action in which a prisoner seeks redress from a government entity" and "dismiss the complaint" if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)&(b)(1). District courts have a duty to dismiss implausible claims "without regard to whether [the claim] is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Moore grounds his Section 1983 claim in a violation of the Eighth Amendment. To plausibly state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was committed or caused by a person acting under the color of state law." Majority Op. at 7–8 (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001)). The Eighth Amendment forbids the federal government from inflicting cruel and unusual punishments. U.S. Const. amend. VIII. It was

23-12468               BRASHER, J., Dissenting                 3

incorporated against the states under the Fourteenth Amendment's Due Process Clause. *Robinson v. California,* 370 U.S. 660 (1962).

In *Graham*, the Supreme Court held that sentencing a juvenile who did not commit murder to life without parole violates the Eighth Amendment. 560 U.S. at 82. On its own terms, *Graham* "concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." 560 U.S. at 63. The Supreme Court later extended *Graham* to sentencing schemes which *mandate* life without parole for juveniles who murdered as well, though it did not forbid courts from imposing such a sentence at their discretion. *See Miller v. Alabama*, 567 U.S. 460, 489 (2012).

In my view, the language of *Graham* establishes that the district court correctly dismissed this claim. The *Graham* Court did not consider the appropriateness of "a particular defendant's sentence" but rather "a sentencing practice itself"—sentencing nonhomicidal juveniles to life without parole. 560 U.S. at 61. It took a "categorical approach" to that sentencing practice, declaring it unconstitutional. *Id.* at 62. As part of its justification for reaching that conclusion, the Court explained that a state must provide a juvenile with a "meaningful opportunity to obtain release." *Id.* at 75. And to accomplish that result, the Court took the sentence of life without parole off the table for nonhomicide juvenile offenders.

The majority says that "*it is plausible that additional process is due to provide Mr. Moore* 'some meaningful opportunity to obtain release based on

demonstrated maturity and rehabilitation." Maj. Op. at 13. No, it isn't. In eliminating the sentence of life without parole, the Court did not hold—or even contemplate—that the Eighth Amendment would require that any person be granted parole or that a state parole board follow any particular process. In fact, the Court expressly contemplated that some people, such as Moore, will remain in prison for their natural lives. The Court held that the "Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." *Id.* The Court explained that the Eighth Amendment merely "prohibit[s] States from *making the judgment at the outset* that those offenders never will be fit to reenter society." *Id.* (emphasis added).

The Supreme Court has never extended *Graham* to inmates sentenced to life *with* the possibility of parole. Neither have we. And such a holding would contravene *Graham's* clear directive that it "concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." 560 U.S. at 63. Our sister circuits have likewise refused to extend the rule in *Graham* to inmates sentenced to life or terms of years with the possibility of parole. *See Brown v. Precythe*, 46 F.4th 879, 886 (8th Cir. 2022) (en banc); *see also Bowling v. Dir., Virginia Dep't of Corr.*, 920 F.3d 192, 198 (4th Cir. 2019); *United States v. Sparks*, 941 F.3d 748, 754 (5th Cir. 2019); *cf. Bunch v. Smith*, 685 F.3d 546, 551 (6th Cir. 2012) (refusing to extend *Graham* "beyond its plain language" to consecutive, fixed term sentences which are the "functional equivalent of life without parole").

23-12468                    BRASHER, J., Dissenting                    5

Despite reversing the district court for dismissing Moore's complaint, the majority does not now purport to extend *Graham* to those sentenced to life with the possibility of parole. *See* Majority Op. at 9–10. Instead, the majority opinion says that some district courts are divided on *Graham*'s applicability to those sentenced to life with the possibility of parole and, on that basis, concludes that this claim deserves to pass through Prison Litigation Reform Act screening. *See id*. For my part, I don't think the existence of a disagreement among district courts is a sufficient basis to reverse a district court. But, more importantly, this disposition seems limited to the facts here—where a district court has dismissed a pro se complaint without requiring a response from the defendants and at least some judges believe the claim deserves encouragement through Prison Litigation Reform Act screening. If this issue were appealed with briefing by both sides, we could give this legal question a more fulsome appellate treatment and, I suspect, reach a different result.

In any event, I agree with the district court that Moore's sentence is consistent with the Eighth Amendment. Moore was sentenced to life with the possibility of parole, not life without parole. And he has been in the past, and continues to be, eligible for parole. Certainly, he has been denied parole. But the Eighth Amendment does not guarantee him parole or a particular process to assess parole.

6                    BRASHER, J., Dissenting                    23-12468

### III.

Because Moore has failed to state a plausible claim for relief, I think we are required to affirm. So I must respectfully dissent.